# EXHIBIT "A"

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| OUR ALCHEMY, LLC, *et al.*, ) | Case No. 16-11596 (JTD) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| _____) | |
| GEORGE L. MILLER in his capacity as ) | |
| Chapter 7 Trustee for the jointly administered ) | |
| bankruptcy estates of Our Alchemy, LLC and ) | |
| Anderson Digital, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 21-51420 (JTD) |
| ) | |
| ANDERSON MEDIA CORPORATION, *et al.* ) | |
| ) | |
| Defendants. ) | **Re: D.I. 41** |

## MEMORANDUM OPINION AND ORDER

Plaintiff, George L. Miller, the Chapter 7 Trustee (the "**Trustee**") for the jointly administered bankruptcy estates of debtors Our Alchemy, LLC ("**Our Alchemy**") and Anderson Digital, LLC (the **Debtors**"), commenced this adversary proceeding against defendants Anderson Media Corporation ("**Anderson Media**"), ANConnect, LLC ("**ANC**"), and Anderson Management Services, Inc. ("**AMS**") (collectively "**Defendants**") asserting claims for fraudulent transfer, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.[1] Following my ruling on Defendants' motion to dismiss, the only remaining claim is Count I, which seeks to avoid and recover certain transfers pursuant to the actual fraud provision of the Delaware Uniform Fraudulent Transfers Act ("**DUFTA**").[2] Defendants filed the instant motion seeking

---

[1] Complaint, Adv. D.I. 1.
[2] Adv. D.I. 20, Opinion and Order dated June 27, 2022.

summary judgment on the remaining claim (the "**Motion**").[3]  For the reasons set forth below, the Motion is granted.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

In July of 2015, Our Alchemy purchased certain assets from ANC (the "**ANC Transaction**").  Not long after, on February 17, 2016, ANC and Anderson Merchandisers filed a complaint against Our Alchemy in Delaware state court (the "**Delaware Action**"), alleging that Our Alchemy owed ANC post-closing adjustments and certain other payments and compensation in connection with the ANC Transaction.  Our Alchemy asserted counterclaims in the Delaware Action for breach of the ANC Transaction's asset purchase agreement and for wrongful withholding of receivables owed to Our Alchemy.[4]

On July 1, 2016, Debtors filed their respective petitions under Chapter 7 of the Bankruptcy Code.  On June 29, 2018, the Trustee commenced an adversary proceeding in this Court against the Defendants and several others, seeking to avoid the ANC Transaction as fraudulent (the "**2018 Action**").[5]

On December 29, 2021, while the 2018 Action remained pending, the Trustee commenced this action, alleging that in June of 2016, while ANC was winding down operations,

---

[3] Adv. D.I. 40.  See also Memorandum of Law in Support of the Defendants' Motion for Summary Judgment, Adv. D.I. 41 ("Opening Br."); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, Adv. D.I. 48 ("Opposition Br."); Defendants' Reply to Plaintiffs' Opposition, Adv. D.I. 49.
[4] *Id*. at 8.  Because of Our Alchemy's bankruptcy filing, the Delaware Action has been stayed pursuant to 11 U.S.C. § 362.
[5] Case No. 18-50633.

2

ANC intentionally made several transfers to insiders in order to defraud known creditors. Specifically, the Complaint alleges that ANC fraudulently transferred approximately $23.8 million to affiliated entities in June and August of 2016 "with the actual intent to hinder, delay, and/or defraud its then-current and future creditors, including Debtors (the "**Transfers**").[6]

Defendants argue that they are entitled to summary judgment on the Trustee's sole remaining claim on the grounds that it is time-barred.[7] Specifically, Defendants argue that the Trustee was in possession of information that put him on inquiry notice of the Transfers as early as 2018, and that the applicable limitations period therefore expired by the time the Trustee filed his complaint in 2021. In response, the Trustee argues that the evidence on which Defendants rely is: (1) inadmissible pursuant to Federal Rule of Evidence 408; and (2) insufficient to support judgment as a matter of law.

## ANALYSIS

### I. LEGAL STANDARD

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine dispute of material fact exists only if a reasonable trier of fact could enter a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court's role is to "determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

---

[6] Complaint at 11-14.
[7] Defendants also argue that the Trustee does not have sufficient evidence to establish actual fraud, but because I can resolve the Motion on the first ground, I need not address that argument.

3

When a movant's evidence demonstrates the lack of a genuine issue of material fact, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 327.

## II. DISCUSSION

### A. Choice of Law

As a preliminary matter, Defendants argue that the Court must perform a choice of law analysis because while the Trustee has pled his claims under Delaware law, Texas has "the most significant relationship" to this case, and thus Texas law must apply. The Trustee disagrees with Defendants' conclusions regarding the "most significant relationship" test but further points out that no choice of law analysis is necessary because there is no substantive difference between the applicable laws of Texas and Delaware. I agree.

The first step in a choice of law analysis is to "determine if there is an actual conflict between competing state laws." *In re Am. LaFrance, LLC*, 461 B.R. 267, 272 n.5 (Bankr. D. Del. 2011). "If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007); *see also, e.g.*, *Mervyn's Holdings*, 426 B.R. at 496 n.6 (declining to decide which of three states' laws applied to fraudulent transfer claims when they had all "similarly adopted the UFTA, and therefore the result is the same regardless of the choice of law issue"). Here, Delaware and Texas have enacted identical extinguishment provisions in their respective versions of the Uniform Fraudulent Transfer Act. Under both the Delaware Uniform Fraudulent Transfer Act ("**DUFTA**") and the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"), a party asserting a claim for actual fraud must do so "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably

4

have been discovered by the claimant." 6 Del. C. 1309(1); Tex. Bus. & Com. Code § 24.010(a)(1). Because the parties have not identified a difference between the laws of Texas and Delaware that is outcome determinative here, I do not need to decide which state's law applies to resolve the Motion.

### B. Applicability of Federal Rule of Evidence 408

A second preliminary matter, raised by the Trustee, is whether the evidence on which the Defendants rely is admissible.[8] In support of their assertion that the Trustee's claim is time-barred, Defendants have submitted testimony regarding statements made at a meeting on September 13, 2018 (the "**2018 Meeting**") held for the purpose of discussing a possible settlement of the claims asserted in the 2018 Action. The Trustee argues that statements made at the 2018 Meeting were made in an attempt to settle the Trustee's claims and are, therefore, inadmissible pursuant to Federal Rule of Evidence 408(a). I disagree.

Although Rule 408 does provide that evidence of "conduct or a statement made during compromise negotiations about the claim" is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[,]" it also provides that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408. Here, the statements made during the 2018 Meeting do not qualify for protection under Rule 408. They are not being offered to prove an element of the claim or to impeach a prior statement but are

---

[8] Rule 56 permits the use of inadmissible evidence at the summary judgment stage, so long as it is capable of being admissible at trial. *Giuliano v. Ins. Co. of the State of Pa. (In re LTC Holdings, Inc.)*, 596 B.R. 797, 802 & n.16 (Bankr. D. Del. 2019) (quoting *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016)).

instead being offered: (1) to establish plaintiff's knowledge for the purpose of assessing the timeliness of his claim; and (2) in an entirely different case than the one that was the subject of the settlement discussions. They therefore fall within the exception set forth within Rule 408(b). *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 266 (E.D.N.Y. 2021) ("Offering settlement negotiations 'for another purpose' includes offering them in a claim different from the one subject to the negotiations."); *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997) ("Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim") (quoting 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980)); *see also, e.g., Ellis v. Buzzi Unicem USA*, 1:06CV96, 2007 U.S. Dist. LEXIS 36371, 2007 WL 1464594 (E.D. Tenn. May 16, 2007), *aff'd*, 293 F. App'x 365 (6th Cir. 2008) (admitting evidence of settlement discussion "[b]ecause this evidence is being offered for another purpose-to establish Plaintiff's prima facie case on another cause of action"); *Kraft v. St. John Lutheran Church*, 414 F.3d 943, 947 (8th Cir. 2005) (finding no abuse of discretion in district court's consideration of settlement negotiations for the purpose of establishing when plaintiff became aware of his injuries for statute of limitations purposes); *B & B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917, 920 (8th Cir. 2012) (finding no abuse of discretion where district court admitted a draft complaint attached to a demand letter because "the draft complaint was admitted for the purpose of establishing when the statute of limitations began to run, which is separate from establishing the elements of the underlying breach of contract claim").

The sole case on which the Trustee relies for his position does not change this result. In *Behlau v. Tiger Tiger Prods., LLC*, 2021 U.S. Dist. LEXIS 48080 (D. N.H. Mar. 16, 2021), the

6

Court held that statements made in a settlement letter were inadmissible under Rule 408 where defendant was attempting to use the statements to establish that the statute of limitations had run. *Behlau* is distinguishable, however, because the statements at issue were not only being offered to prove that the claim was time-barred, but also to impeach the plaintiff's statements regarding an amendment to the agreement that was the subject of the dispute. *Id.* at *9 -10 ("Tiger uses the statement to impeach Behlau's evidence that the agreement was not amended *and* to show that the statute of limitations bars the claim. That is not a permissible use under Rule 408.") (emphasis added). In *Behlau*, because the amendment of the agreement would have meant that the loan term was extended, admission of the statements at issue would have both proved the statute of limitations issue and disproved an element of the plaintiff's claim. The same cannot be said here.

For these reasons, the statements made at the 2018 Meeting are admissible under Rule 408.

C. **Application of the Discovery Rule**

Having determined that the statements made at the September 2018 Meeting are properly before me, I now consider whether they render the Trustee's claims untimely.

As noted above, where a party's fraudulent transfer claim is based on actual fraud, both DUFTA and TUFTA provide for a one-year extension of the limitations period in certain circumstances. 6 Del. Code § 1309(1); Tex. Bus. & Com. Code § 24.010(a)(1). Frequently referred to as the "discovery rule," this provision extends the time in which a party may file a claim by one year after the plaintiff knew or could have reasonably discovered the transfer and its fraudulent nature. *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 642 B.R. 155, 163 (Bankr. D. Del. 2022). "Generally, the plaintiff bears the burden of showing that the

7

discovery rule tolls the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

Defendants argue that the Trustee was in possession of information that should have alerted him to the possibility that he held a claim as early as 2018. In support of this position, Defendants submitted the testimony of Jay Maier, Chief Financial Officer of defendant Anderson Media.[9] Mr. Maier testified that he attended the 2018 Meeting to explore potential settlement of the Trustee's claims.[10] During the meeting, Mr. Maier disclosed that ANC sold its operating assets in 2015 and 2016 and had ceased operations by 2017. He further noted that Anderson Media and Anderson Services received several million dollars from ANC.[11] Mr. Maier testified that he made these disclosures so that the Trustee would understand that even if he were successful in the prosecution of his claims against ANC, there were limited assets to satisfy a judgment. Mr. Maier stated that he answered the questions asked of him at the 2018 Meeting and was not asked any questions about the transfers at his deposition.[12] Defendants argue that Mr. Maier's testimony establishes that the Trustee was on inquiry notice regarding possible fraudulent transfers from ANC to its affiliates.

In response, the Trustee sets forth his own version of the facts through the testimony of Steven Coren, the Trustee's counsel, who testified that, "Mr. Maier stated that ANConnect was 'judgment proof,'" after which:

> 7. [T]he Trustee and [Attorney Coren] attempted to drill down into specifics about ANConnect's finances, [and] were met with stonewalling . . . . In response to an inquiry about upstreaming, Mr.Maier and [ANConnect] Attorney [Grant] Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only "a million dollars or two."

---

[9] Declaration of Jay Maier, Opening Br., Exhibit A.
[10] *Id.* ¶ 32.
[11] *Id.* ¶ 34.
[12] *Id.*

8

8. [Attorney Coren] requested that ANConnect, which is a private company with nonpublic finances, support the contention that only one or two million dollars was upstreamed to its parent entities and that it was insolvent by providing supporting financial documents. Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment.

9. In [Attorney Coren's] extensive experience representing Trustees . . ., it is typical for defendants to "cry poor" during settlement discussions, and [Attorney Coren has] represented Trustees which obtained significant financial recoveries from defendants who previously claimed to be judgment proof. Given this, the inadmissible nature of settlement discussions, and the relaxed rules concerning candor in the context of settlement discussions, [Attorney Coren] did not take the statements of Mr. Maier and Attorney Stein to be factual statements, but rather as incidental puffery typical to negotiation.

10. It was not until March 2021, when ANconnect made its document production in the Companion Adversary Proceeding, that the Trustee and [Attorney Coren] discovered that the actual amount upstreamed by ANConnect to its related entities was not one or two million dollars, as suggested by Attorney Stein and Mr. Maier during the September 2018 meeting, but was in fact nearly $24 million, an exponentially higher amount.[13]

The Trustee further argues that Mr. Coren's recollection of the meeting is corroborated by the deposition testimony of the Trustee and of William Homony, a partner at Miller Coffey Tate LLP, the Trustee's accountants and bankruptcy consultants. *See* Opposition Br**.,** Ex. V, Miller Dep. at 10:19-11:9, 13:5-19:19 (the Trustee testifies that ANConnect's attorney "said that there were certain minor transfers. . . you know, $1 million or $2 million or something like that. . . . he never said $29 million. Never. . . . I asked for the documentation. And I never got it. So, in my opinion, it was all posturing, and they didn't have any evidence to support that."); Opposition Br., Ex. W, Homony Dep. at 77:19-78:5, 80:9-82:13 (Homony testifies that "I only recall Grant saying that in connection with the up-streaming comment, we

---

[13] Opposition Br. at 26, quoting Declaration of Steven M. Coren ("**Coren Decl.**"), Opposition Br., Ex A, ¶¶ 4-10 (alterations in Opposition Br.).

9

asked how much, and I believe Grant said a few million dollars was up-streamed."). The Trustee concludes that this testimony refutes Defendants' assertions that he was sufficiently informed of the Transfers or their magnitude, and instead shows that the truth concerning the magnitude of the Transfers was concealed by misrepresenting the amounts up-streamed as relatively minor. Additionally, the Trustee contends that the information conveyed in 2018 would not have been enough to allow him to state a claim with particularity as required by Federal Rule of Civil Procedure 9(b) and that resolution of these disputed issues of fact requires the weighing of evidence and credibility determinations that the Court cannot make on summary judgment. I disagree.

The one-year savings provision under either DUFTA or TUFTA "begins to run at the point when a plaintiff discovers or, in the exercise of reasonable care, could have discovered the transfer and its fraudulent nature." *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1240 (Del. Ch. 2019); see also *Duran v. Henderson*, 71 S.W.3d. 833, 839 (Tex. App. 2002) (citing *Ruebeck v. Hunt*, 142 Tex. 167, 176 (1943)) ("[TUFTA's] discovery rule provides that a claim for fraud does not accrue, and thus the limitation period does not begin to run, until the fraud is discovered, or in the exercise of reasonable diligence should have been discovered."). While the Trustee makes much of the fact that the information conveyed at the meeting would not have been sufficient under the applicable rules of civil procedure for him to file a complaint for fraudulent transfer, that is not relevant. The limitations period begins when a party becomes aware of information that would prompt a reasonable person to conduct an inquiry. *Pomeranz v. Museum Partners, L.P.*, No. Civ.A 20211, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005) ("[P]laintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an

investigation that, if pursued would lead to the discovery of the injury); *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 859-60 (Del. Ch. 2020) (quoting *In re Dean Witter*, No. Civ.A. 14816, 1998 WL 442456, at*7 (Del. Ch. July 17, 1998) ("Under the inquiry notice standard, Plaintiffs were required to file their claims no more than one year after 'persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, *if pursued*, would lead to the discovery of the injury' to file their claim."); *In re Transamerica Airlines, Inc.*, No. Civ.A. 1039-N, 2006 WL 587846, at *5-6 (Del. Ch. Feb. 28, 2006) (refusing to apply the discovery rule where previously discovered information should reasonably have been expected to cause a person in the Plaintiff's shoes to conduct an inquiry). Here, even if I set aside completely the evidence submitted by the Defendants, the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the possibility that he held a claim.

The statements made at the 2018 Meeting were not made in isolation but were made in the context of the parties' attempt to settle the Trustee's already existing litigation in which he alleges that Defendants had made other fraudulent transfers. Given that fact, there can be no reasonable debate about whether the revelations made at the 2018 Meeting that *more* transfers had been made should have set off alarm bells. In fact, the Trustee's own witness admitted that this was precisely his reaction when, at the 2018 Meeting, Defendants informed him that ANC was judgment proof. As Mr. Coren testified:

> When the Trustee and I attempted to drill down into specifics about [ANC]'s finances, we were met with stonewalling by Mr. Maier and Attorney Stein. **One of my specific concerns given the large amount of cash paid to [ANC] as part of the [ANC Transaction] (over $29 million) was whether [ANC] had up-streamed any monies to any of its related entities.**[14]

---

[14] Coren Decl., ¶ 7 (emphasis added).

11

Mr. Coren went on to testify that in response to his follow up questions to Defendants about possible up-streaming, he was told that Defendants would not be providing any more details without a judgment, information that should have solidified his concerns that something unlawful might have occurred rather than alleviated them. Yet, the Trustee decided not to take further action at that time. This decision was fatal to his claim. *See Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. Ct. App. 2005) ("the discovery rule requires a plaintiff to seek information about his injuries and their likely cause once he is apprised of facts that would make a reasonably diligent person seek information"); *Basic Capital Mgmt. v. Dynex Capital, Inc.*, 976 F.3d 585, 591 (5th Cir. 2020) ("Upon hearing that a defendant no longer has any assets, especially one being sued for millions of dollars, a reasonable plaintiff would make some sort of inquiry into the situation. And since discovery in the state-court litigation was ongoing when the deposition occurred, asking a few follow-up questions at the deposition, for example, would likely have borne fruit.").

       The Trustee counters that the information he possessed in 2018 suggested only *de minimis* transfers of $1 or $2 million, which the Trustee did not feel was worthy of investigation. The Trustee contends that it was not until 2021 that he learned that Defendants had actually transferred nearly $24 million, at which point, the Trustee contends, he acted promptly in filing this action. But that is not how the discovery rule works. "A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Amo Dev., LLC v. Alcon Vision, LLC*, Civil Action No. 20-842-CFC, 2022 U.S. Dist. LEXIS 219368, at *15 (D. Del. Dec. 6, 2022) (quotations and citations omitted) (rejecting argument that the information at plaintiff's disposal "did not provide a meaningful window into the full extent of the copying reflected in

[defendant's] source code"); *see also Kach v. Hose*, 589 F.3d 626, 635 (3d Cir. 2009) (holding that statute of limitations begins to run "even though the full extent of the injury is not then known or predictable") (citations omitted).

I am similarly unpersuaded by the Trustee's argument that the information conveyed at the 2018 Meeting only suggested transfers had been made but lacked sufficient detail for him to conclude they were fraudulent. In support of this position the Trustee relies on *State Farm Mut. Auto. Ins. Co. v. Cordua*, 834 F. Supp. 2d 301, 308 (E.D. Pa. 2011). In *Cordua*, the Court denied summary judgment on the issue of the timeliness of plaintiff's claims because defendants failed to establish that plaintiffs knew or should have known about the fraudulent nature of the transfers. *Id.* at 308 (holding that the fact that plaintiffs knew defendant had received proceeds did not place them on notice of fraudulent transfers, where they had no reason to know the proceeds were being passed on to another entity). Unlike the plaintiffs in *Cordua*, however, at the time the Trustee received the information in question, he was already in the midst of a lawsuit in which he had alleged the Defendants were making transfers of a fraudulent nature. Given that fact, it is patently unreasonable for the Trustee to claim that he should not be charged with knowledge that these new transfers might also be of a fraudulent nature.

The Trustee suggests that he would have been unable to discover the truth about the Transfers even if he had pursued the matter further in 2018, arguing that in light of the Defendants' repeated resistance to his discovery efforts it was reasonable for him to conclude that Defendants likely would not have complied with Rule 2004 requests or other investigative means. That is mere speculation and does not excuse the Trustee's total inaction. The discovery process, including Rule 2004 examinations, provides procedural mechanisms to compel a

recalcitrant party to respond. The evidence the Trustee put forth does not demonstrate that he was unable to discover the alleged fraud, only that he chose not to do so.

Because the Trustee cannot show that he acted with reasonable diligence in investigating his claims upon his awareness that the Defendants may have made unlawful transfers, he has not met his burden of establishing that he is entitled to the benefit of either DUFTA's or TUFTA's one-year savings clause. His claim is therefore untimely and must be dismissed.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

For the foregoing reasons, Defendants' Motion is **GRANTED**.

Dated: February 13, 2024

_____
JOHN T. DORSEY, U.S.B.J.

14