## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE OUR ALCHEMY, LLC, et al. | Bankruptcy Appeal |
| *Debtors*. | DE Bankr. Case No. 16-11596 (JTD) |
| | DE Bankr. Adv. No. 21-51420 (JTD) |
| | DE Bankruptcy BAP No. 24-00007 |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | |
| *Appellant*, | Civil Action No. 1:24-cv-00243-CFC |
| v. | |
| ANDERSON MEDIA CORPORATION, *et al.*, | |
| *Appellees*. | |

## APPELLANT'S OPENING BRIEF

John T. Carroll, III (DE Bar No. 4060)
**COZEN O'CONNOR**
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Fax: (302) 295-2013
jcarroll@cozen.com

Steven M. Coren *(pro hac vice)*
**COREN & RESS, P.C.**
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com

Counsel for Appellant George L. Miller, Chapter 7 Trustee
for the Estates of Our Alchemy, LLC and Anderson Digital, LLC

**<u>TABLE OF CONTENTS</u>**

Table of Authorities.................................................................................................. ii

JURISDICTIONAL STATEMENT ............................................................................1

ISSUE PRESENTED AND STANDARD OF REVIEW ...........................................1

STATEMENT OF THE CASE....................................................................................2

   I.  Relevant Procedural History....................................................................2

   II.  Statement of Relevant Facts ...................................................................4

       A.  The ANConnect Transaction ................................................4

       B.  The Delaware State Court Action ..........................................5

       C.  ANConnect Funnels Money to Affiliates ............................5

       D.  September 13, 2018 Settlement Meeting.................................8

       E.  Discovery in the 2018 Action Reveals the True Extent of the
            Fraudulent Transfers............................................................10

SUMMARY OF THE ARGUMENT .......................................................................11

ARGUMENT ..........................................................................................................11

   I.  The Bankruptcy Court Erred By Holding That Misstatements Made
      During The Settlement Meeting Put The Trustee On Notice Of
      Potential Claims.....................................................................................13

   II.  The Bankruptcy Court Erred In Applying The Discovery Rule
      By Usurping The Role Of The Factfinder To Hold That The
      Trustee Did Not Act With Reasonable Diligence In Investigating
      His Claims .............................................................................................19

   III. The Bankruptcy Court Decision Will Have A Chilling Effect On
      Settlement Discussions In This Circuit ..................................................23

CONCLUSION........................................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................2

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585 (5th Cir. 2020) .............12

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010).....................................24

*Est. of Ewers*, No. 01-21-00331-CV, 2024 WL 333334
(Tex. App. Jan. 30, 2024) ........................................................................................19

*In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005).......12

*In re Martin*, 91 F.3d 389 (3d Cir. 1996) .................................................................24

*In re PennySaver USA Publ'g, LLC*, 602 B.R. 256 (Bankr. D. Del. 2019) .............15

*In re Washington Mut., Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009) ...........................20

*In re Zohar III, Corp.*, 631 B.R. 133 (Bankr. D. Del. 2021)...................................15

*Janvey v. Romero*, 817 F.3d 184 (5th Cir. 2016).....................................................12

*Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 WL 4016413
(Tex. App. Aug. 23, 2018)........................................................................................12

*JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019)....... passim

*Miller v. ANConnect, LLC, et al.*, Adv. No. 18-50633...............................................2

*Miller v. Wachovia Bank, N.A. (In re WL Homes LLC)*, 476 B.R. 830
(D. Del. 2012) .............................................................................................................1

*Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993).........................................................1

*Santander Bank, N.A. v. Branch Banking & Tr. Co.*, 2020 WL 42724
(M.D. Pa. Jan. 3, 2020) ............................................................................................14

*Union Tank Car Co. v. Maxwell*, 2021 WL 2044345 (S.D. Tex. May 21, 2021) ....18

**Other Authorities**

9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)............................................24

**Statutes and Rules**

28 U.S.C. § 157 ...............................................................................................1

28 U.S.C. § 158 ...............................................................................................1

28 U.S.C. § 1334 .............................................................................................1

6 Del. C. § 1309 ....................................................................... passim

Fed. R. Bankr. P. 7056...................................................................................2

Fed. R. Civ. P. 56....................................................................... 2, 17, 21

Fed. R. Bankr. P. 2004...................................................................................20

Tex. Bus. & Com. Code § 24.010 ...................................................... passim

## JURISDICTIONAL STATEMENT

Appellant George L. Miller, Chapter 7 Trustee (the "Trustee") for the Estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson Digital"), appeals from a final judgment of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On February 13, 2024, the Bankruptcy Court granted summary judgment in favor of Appellees Anderson Media Corporation ("Anderson Media"), ANConnect, LLC ("ANConnect"), and Anderson Management Services, Inc. ("AMS") (collectively, "Appellees"), on the sole remaining claim in the underlying adversary proceeding. A1519-1532[1] (Memorandum Opinion and Order). The Trustee timely filed his appeal on February 22, 2024. A1609. The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334 & 157. This Court has jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUE PRESENTED AND STANDARD OF REVIEW

1.    Whether the Bankruptcy Court usurped the role of the factfinder and misapplied the discovery rule when it held that the Trustee's claims were time-barred based on a finding that the Trustee was on notice of potential claims and did not act with reasonable diligence to investigate them?

---

[1]    Citations to "A___" refer to the Trustee's/Appellant's Appendix to Appellant's Opening Brief submitted concurrently with this brief.

1

The bankruptcy court's legal conclusions are subject to plenary review. *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993); *Miller v. Wachovia Bank, N.A. (In re WL Homes LLC)*, 476 B.R. 830, 833 (D. Del. 2012).  To the extent that the bankruptcy court's grant of summary judgment relies on factual findings, the lower court made those findings as "a purely legal determination," and this Court must apply a *de novo* standard of review. *Rosen*, 996 F.2d at 1530 n.2; *WL Homes*, 476 B.R. at 833.

Fed. R. Civ. P. 56, applicable to the underlying adversary proceeding pursuant to Fed. R. Bankr. P. 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  This Court is required to view all facts in the light most favorable to Appellant and to resolve any doubts as to the existence of genuine issues of fact against Appellees. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 n. 2 (1986).

## STATEMENT OF THE CASE

### I.    Relevant Procedural History

Alchemy and Anderson Digital filed for Chapter 7 bankruptcy on July 1, 2016. *See* A1520.  On June 29, 2018, the Trustee commenced a related adversary proceeding against multiple defendants, including ANConnect, captioned *Miller v. ANConnect, LLC, et al.*, Adv. No. 18-50633 (the "2018 Action"), which seeks, *inter*

*alia*, to avoid Alchemy's July 2015 purchase of certain assets from ANConnect as a fraudulent transfer.  *See id.*; *see also* A13-57 (docket from 2018 Action), A58-120 (Complaint from 2018 Action).  The 2018 Action remains pending.

In March 2021, during discovery in the 2018 Action, the Trustee learned that ANConnect had transferred approximately $24 million to related entities in June and August 2016 (collectively, the "Transfers"), while it was winding down operations. *See infra* Section II.C and II.D.

The Trustee commenced the underlying adversary proceeding on December 29, 2021 against Anderson Media, ANConnect, and AMS, seeking to, *inter alia*, avoid and recover the Transfers as actual fraudulent transfers (the "2021 Action"). *See* A278-294 (Complaint from 2021 Action).  On June 27, 2022, the Bankruptcy Court denied Appellees' motion to dismiss the Trustee's actual fraudulent transfer claims.  *See* A7 (pertinent docket entry).[2]

Following discovery in the 2021 Action, Appellees moved for summary judgment.  A322-A746.  On February 13, 2024, the Bankruptcy Court held that the Trustee's actual fraudulent transfer claims are time-barred and granted summary

---

[2]    The Trustee's Complaint also asserted claims for constructive fraudulent transfer, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty, which the Bankruptcy Court dismissed.  Accordingly, the sole remaining claim in the 2021 Action is Count I, for actual fraudulent transfer.

judgment. *See* A1519-1532.[3]    To reach this conclusion, the Bankruptcy Court improperly intruded on the role of the factfinder when it resolved fact-based questions of reasonableness and inquiry notice against the Trustee as a matter of law—giving rise to the error complained of in this appeal.

## II.    Statement of Relevant Facts

Anderson Media is a closely held Delaware corporation which functions as the holding company for a group of companies which includes ANConnect and AMS. *See* A305 at ¶ 8.    ANConnect and AMS are wholly owned by Anderson Media, and AMS is the sole Manager of ANConnect. *See id.* at ¶¶ 9-10.    ANConnect is a Texas limited liability company, and AMS is a Tennessee corporation. *See id.* at ¶¶ 8-10.    Anderson Media and ANConnect are privately held companies with non-public finances. *See id.* at ¶ 8; A313 at ¶ 64.

### A.    The ANConnect Transaction

In July 2015, pursuant to an Asset Purchase Agreement dated May 7, 2015 ("APA"), Debtor Alchemy purchased certain physical home video and digital distribution capabilities from ANConnect, including, *inter alia*, the purchase of Debtor Anderson Digital (the "ANConnect Transaction"). *See* A807-879.    The cash

---

[3]    Granting summary judgment on statute of limitations grounds, the Bankruptcy Court did not address Appellees' argument as to the sufficiency of the evidence. *See* A1521 at n.7.    Accordingly, the Trustee's Statement of Relevant Facts includes only those relevant to Appellees' statute of limitations defense.

payments made by Alchemy to ANConnect in connection with the transaction's closing totaled $29,888,124.40. A881. ANConnect knew that Alchemy failed to receive reasonably equivalent value in the ANConnect Transaction, as it internally described the business as "immediately and forever upside down." A884.

### B.    The Delaware State Court Action

On February 17, 2016, ANConnect and Anderson Merchandisers (another Anderson affiliate) sued Alchemy in the Superior Court of Delaware (the "Delaware State Court Action"), alleging that Alchemy owed them for post-closing adjustments and certain other payments under the APA, as well as compensation for various services under a Transition Services Agreement between Alchemy and ANConnect. *See* A889-912 (Delaware State Court Action Complaint).

On April 11, 2016, Alchemy filed an Answer with Affirmative Defenses and Counterclaims in the Delaware State Court Action, denying liability and asserting Counterclaims against ANConnect for breach of the APA and ancillary documents, including a claim for ANConnect's wrongful withholding of more than $6 million in receivables which ANConnect admitted it owed to Alchemy. *See* A925-991; *see also* A911 at ¶¶ 67-68.

### C.    ANConnect Funnels Money to Affiliates

During the summer of 2016, while ANConnect was liquidating its assets and winding down operations and only a few months after Alchemy asserted its

Counterclaims in the Delaware State Court Action, ANConnect began funneling money to its affiliates, via the Transfers, to frustrate payment on Alchemy's claims. Specifically, ANConnect made the following Transfers:

- June 2016 AM Transfer: In June 2016, ANConnect transferred $10 million to Anderson Media as an equity distribution.[4]

- June 2016 AMS Transfer: ANConnect also transferred $1,096,320 to AMS in June 2016.[5]

- August 2016 Transfer: In August 2016, ANConnect transferred an additional $5 million to Anderson Media as an equity distribution.[6]

---

[4]    *See* A1080-1083 (August 5, 2016 email from Boris Popov, Director of Internal Audit, to Anderson Media CFO Jay Maier and ANConnect CFO/COO Chuck Taylor, attaching "Cash Flow Analysis" for ANConnect, with section entitled "Cash Flow to Parent" confirming a "Distribution to Media (completed in June)" in the amount of $10,000,000); A1084-1087 (spreadsheet indicating that Anderson Media received a "Special payment" of $10 million in June 2016).

[5]    *See* A312, Defendants' Answer (Adv. D.I. 28), at ¶ 50 ("Defendants admit that [ANConnect] transferred $1,096,320 to AMS in June 2016."). This payment was not for legitimate "management fees" (as Defendants asserted in their motion for summary judgment), because internal ANConnect records establish that management fees for just three quarters of 2016—a year in which ANConnect was winding down its operations—had increased by $15 million from the prior year without justification. *See* A1089 at n. 1 (internal ANConnect income statement as of September 30, 2016).

[6]    *See* A1091-1093 (September 28, 2016 email from Popov to Maier with attachment confirming that a "P[a]yment to Anderson Media" in the amount of $5,000,000 was "Paid in August").

- Additional Transfer: ANConnect transferred an additional $8.8 million to Anderson Media, over and above the June 2016 AM Transfer and the August 2016 Transfer (which together, totaled $15 million).[7]

While Appellees' summary judgment filings disputed (without evidentiary support) the purpose of the Transfers and whether some were made to Anderson Media or AMS, they did *not* dispute that ANConnect made the Transfers in the amounts indicated.

When the Transfers were made, ANConnect was liquidating all its business lines. *See, e.g.,* A1081 (noting that ANConnect sold its book business effective 4/29/16 and sold its music and internet business effective 7/8/16). ANConnect suffered substantial operating losses and negative EBITDA from 2014-2016, including a net loss of $4.37 million for its fiscal year ending October 3, 2014, and negative rolling twelve-month EBITDA of $16.9 million as of 1/30/15 and $7.8 million as of 5/29/15. *See* A1103 (Combined Financial Report showing $4.37

---

[7]    This is established by evidence that ANConnect had made a total of $23.8 million in transfers to Anderson Media in the wake of sales of its video, music, and book businesses. *See* A1095-1097 (December 13, 2016 email attaching "Analysis for Board discussion 12.13.16.xlsx," stating ANConnect made a total of $23.8 million in "Payments to parent"—*i.e.*, to Anderson Media, ANConnect's parent company). According to numerous ANConnect internal documents, the almost $24 million in transfers constituted distributions—not legitimate payments for services. *See* A1083 (stating that ANConnect intended to upstream $23.6 million to Anderson Media "net of loan repayment"); A1085-1087 (anticipating that ANConnect would make "[s]pecial payment[s]" totaling $23.5 million to Anderson Media from June 2016-February 2017).

million loss for year ended 10/3/2014); A1105 (listing a negative $16,897,992 EBITDA for the ANConnect business unit for the 12 months ended 1/30/15); A1107 (listing a negative $7,816,116 EBITDA for the ANConnect business unit for the 12 months ended 5/29/15). ANConnect's internal balance sheet as of September 30, 2016—after all its business lines had been sold—reflects that ANConnect was insolvent because its liabilities exceeded its assets by $7.2 million, even without considering the $8 million in improperly-withheld receivables due to Alchemy pursuant to the Counterclaims. *See* A1109-1111 (December 8, 2016 email from Taylor to Maier and another individual, attaching "detailed trial balance as of September 30, 2016" which indicates assets totaling $12,972,382.12 and liabilities totaling $20,175,350.55).

### D.    September 13, 2018 Settlement Meeting

On September 13, 2018, the parties met to discuss settlement (the "Settlement Meeting") of the Trustee's claims in the 2018 Action. *See* A361-371, Maier Decl. at ¶ 32 (purpose of meeting was "to explore settlement of the Trustee's claims"); A783-789, Coren Decl. at ¶¶ 4-5. During the Settlement Meeting, Anderson Media's CFO, Jay Maier, "stated that ANConnect was 'judgment proof.'" A784, Coren Decl. at ¶ 6. In response:

> 7.    [T]he Trustee and [the Trustee's attorney Steven Coren] attempted to drill down into specifics about ANConnect's finances, [and] were met with stonewalling . . . . In response to an inquiry about

upstreaming, Mr. Maier and [ANConnect] Attorney [Grant] Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only "a million dollars or two."

8.  [Attorney Coren] requested that ANConnect, which is a private company with nonpublic finances, support the contention that only one or two million dollars was upstreamed to its parent entities and that it was insolvent by providing supporting financial documents. Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment.

9.  In [Attorney Coren's] extensive experience representing Trustees . . . it is typical for defendants to "cry poor" during settlement discussions, and [Attorney Coren has] represented Trustees which obtained significant financial recoveries from defendants who previously claimed to be judgment proof. Given this, the inadmissible nature of settlement discussions, and the relaxed rules concerning candor in the context of settlement discussions, [Attorney Coren] did not take the statements of Mr. Maier and Attorney Stein to be factual statements, but rather incidental puffery typical to negotiation.

10. It was not until March 2021, when ANconnect made its document production in the [2018 Action], that the Trustee and [Attorney Coren] discovered that the actual amount upstreamed by ANConnect to its related entities was not one or two million dollars, as suggested by Attorney Stein and Mr. Maier during the September 2018 meeting, but was in fact nearly $24 million, an exponentially higher amount.

A784-786, Coren Decl. at ¶¶ 7-10 (footnote 1 omitted).

Attorney Coren's recollection of the meeting is corroborated by the deposition

testimony of the Trustee and of William Homony, a partner at Miller Coffey Tate

9

LLP, the Trustee's accountants and bankruptcy consultants.  *See* A1122-1131, Miller Dep. at 10:19-11:9, 13:5-19:19 (the Trustee testifies that ANConnect's attorney "said that there were certain minor transfers. . . you know, $1 million or $2 million or something like that. . . . he never said $29 million.  Never. . . .  I asked for the documentation.  And I never got it.  So, in my opinion, it was all posturing, and they didn't have any evidence to support that."); A1385-1390, Homony  Dep. at 77:19-78:5, 80:9-82:13 (Homony testifies that "I only recall Grant saying that in connection with the upstreaming comment, we asked how much, and I believe Grant said a few million dollars was upstreamed.").

There is a disputed issue of material fact as to whether, at the Settlement Meeting, Appellees informed the Trustee of the Transfers or their magnitude.

## E.    Discovery in the 2018 Action Reveals the True Extent of the Fraudulent Transfers

In March 2021, when ANConnect made its document production in the 2018 Action, the Trustee and his counsel first discovered that ANConnect had upstreamed, via the Transfers, nearly $24 million to its related entities.  *See* A785-786, Coren Decl. at ¶ 10; A1131-1132, Miller Dep. at 19:6-20:7 (Trustee testifies that he did not discover the amount upstreamed by ANConnect until "discovery [in the 2018 Action] started, and then we found that in discovery."); A1390, Homony Dep. at 82:10-13; A1440-1442 (3/25/21 letter from ANConnect attorney conveying

10

"ANConnect's first production"); A1080-1083 and A1095-1097 (documents produced by ANConnect on 3/25/21 as part of its first production that for the first time disclosed to the Trustee the existence and magnitude of the transfers at issue).

Shortly thereafter, in December 2021, the Trustee commenced the 2021 Action.  During discovery, the Trustee requested that Appellees identify all transfers ANConnect made to its affiliates since 2015 and the purpose of those transfers. A1444-1452 at pp. 5-6.  Appellees refused to do so, objecting that the request sought "confidential information," was "overbroad" and "irrelevant," and stating that data which may be necessary to respond to the request was either in remote storage or on a deactivated server.  *Id.*

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court erred in ruling that Plaintiff's claims were untimely under 6 Del. C. § 1309(1) and/or Tex. Bus. & Com. Code § 24.010(a)(1). Specifically, the Bankruptcy Court usurped the role of the factfinder and erred when it held as a matter of law that (i) misstatements made during the Settlement Meeting were sufficient to put the Trustee on notice of potential claims; and (ii) the Trustee did not act with reasonable diligence in investigating his claims.

## ARGUMENT

Delaware and Texas apply the same statute of limitations for actual fraudulent transfer claims, which under the law of both jurisdictions must be brought "within 4

years after the transfer was made or the obligation was incurred, or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant."  6 Del. C. § 1309(1); *accord* Tex. Bus. & Com. Code Ann. § 24.010(a)(1).[8]

The Trustee's actual fraudulent transfer claim is governed by the statutory language which allows claims to be brought within one year after the transfer was or could reasonably have been discovered, sometimes referred to in caselaw as the "discovery rule."  Under the laws of Delaware and Texas, that one-year period does not begin to run until the plaintiff knew of or could reasonably have discovered ***both*** the transfer ***and*** its fraudulent nature.  *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1239-40 (Del. Ch. 2019); *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589-90 (5th Cir. 2020).

"When a plaintiff discovered or could reasonably have discovered a transfer is generally a question of fact for the fact-finder." *Janvey v. Romero*, 817 F.3d 184, 189 (5th Cir. 2016); *Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 WL 4016413, at *9 (Tex. App. Aug. 23, 2018) ("Whether a fraudulent-transfer claim has been extinguished by the statute of repose ordinarily presents a question of fact

---

[8]    The Bankruptcy Court held correctly that it was unnecessary to engage in a choice of law analysis to determine if Delaware or Texas law applies, because the relevant provisions of the Delaware Uniform Fraudulent Transfer Act ("DUFTA") and Texas Uniform Fraudulent Transfer Act ("TUFTA") are identical.  *See* A1522-1523.

for the factfinder to resolve."); *In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611, at *16 (D. Del. Nov. 15, 2005) (holding under Delaware law that application of the discovery rule in a fraudulent transfer case "is a factual issue").

## I. The Bankruptcy Court Erred By Holding That Misstatements Made During The Settlement Meeting Put The Trustee On Notice Of Potential Claims

The Bankruptcy Court invaded the province of the jury to make credibility determinations and resolve disputed issues of material fact, and misapplied the discovery rule when it held as a matter of law that Appellees' misstatements at the Settlement Meeting concerning the magnitude of the Transfers sufficiently put the Trustee on notice of his claims.

As set forth above, the Trustee submitted evidence—specifically, deposition testimony of the Trustee and Mr. Homony, and Attorney Coren's Declaration— which refuted Appellees' assertions[9] that they sufficiently informed the Trustee or his counsel of the Transfers or their magnitude.  *See* A1122-1131, Miller Dep. at 10:19-11:9, 13:5-19:19 (Trustee's testimony that Appellees' attorney said there were "minor transfers . . . $1 million or $2 million or something like that" and never provided any further documentation); A1385-1390, Homony Dep. at 77:19-78:5, 80:9-82:13 (Mr. Homony's testimony that Appellees' attorney said "a few million dollars was upstreamed"); A784-786, Coren Decl. at ¶¶ 6-10 (setting forth Attorney

---

[9]    *See* A370, Declaration of Jay Maier at ¶ 34.

Coren's recollection of the Settlement Meeting, including that Appellees' attorney represented that "a small amount . . . only 'a million dollars or two'" was transferred and refused to provide further information). The testimony proffered by the Trustee instead shows that the truth concerning the magnitude of the Transfers was concealed by misrepresenting the amounts upstreamed as relatively minor.

Resolution of the disputed issues of fact relating to the disclosures at the Settlement Meeting required the weighing of evidence and credibility determinations that the Bankruptcy Court was not permitted to make on summary judgment. Acknowledging that there was conflicting testimony concerning the parties' discussions at the Settlement Meeting (*see* A1526-1528), the Bankruptcy Court erred when it rejected the Trustee's version of events and held that misstatements made during a settlement discussion were sufficient as a matter of law to put him on notice of a potential claim. But it was for the jury to weigh the parties' credibility and to make factual determinations such as whether the Appellees' statements at the Settlement Meeting were misleading, whether such statements would put a reasonable plaintiff on notice of the Transfers and their fraudulent nature, and, as discussed in greater detail below, whether the Trustee acted with reasonable diligence. *See, e.g.*, *Santander Bank, N.A. v. Branch Banking & Tr. Co.*, 2020 WL 42724, at *6 (M.D. Pa. Jan. 3, 2020) (denying summary judgment under Pennsylvania UFTA's one-year discovery rule, where parties presented "competing

14

evidence" and "reasonable fact finders could differ" as to when plaintiff could reasonably have discovered defendant's fraud).

The inaccurate disclosures during the Settlement Meeting did not provide notice to the Trustee of information sufficient to bring fraudulent transfer claims. It is well-established that a fraudulent transfer claim is not adequately pleaded without sufficient specificity concerning the timeframe, amount, and fraudulent intent (whether established by direct evidence or via badges of fraud) of the challenged transfers. *See, e.g., In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 268 (Bankr. D. Del. 2019); *In re Zohar III, Corp.*, 631 B.R. 133, 169-70 (Bankr. D. Del. 2021). Appellees' vague and inaccurate disclosures during the Settlement Meeting would not meet this standard. *See* A786, Coren Decl. at ¶ 11.[10]

The Bankruptcy Court misapplied the discovery rule when it held: "The Trustee contends that it was not until 2021 that he learned that Defendants had actually transferred nearly $24 million, at which point, the Trustee contends, he acted promptly in filing this action. **But that is not how the discovery rule works**." A1530 (emphasis added).

---

[10]    Moreover, the relatively small amount of potential upstreaming revealed to the Trustee (only "a million dollars or two" compared to the over $50 million in claims asserted against ANConnect and its affiliates in the 2018 Action) would not reasonably have justified the expense and burden of filing and prosecuting an additional adversary proceeding. *See* A786, Coren Decl. at ¶ 11.

Contrary to the decision of the Bankruptcy Court, the recent decision of the Delaware Court of Chancery in *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019), addressing § 1309(1) of DUFTA under analogous facts, establishes that the Trustee's prompt action upon learning the full magnitude of the Transfers satisfied the discovery rule.

In *JPMorgan Chase Bank*, the plaintiff asserted actual fraudulent transfer claims under DUFTA to avoid, *inter alia*, dividend payments made to defendant's stockholders. The defendant moved to dismiss on the basis that the claims were untimely. *See JPMorgan Chase Bank*, 213 A.3d at 1238. The Chancery Court rejected these arguments, holding that the claims to avoid the dividends were timely under the one-year discovery period in 6 Del. C. § 1309(1) because, prior to the one-year period, the plaintiff knew only that "some dividends" had been paid over the course of several years, but was not "aware of the scope of [defendant's] dividend payments or of [defendant's] financial condition at the time so as to put [plaintiff] on notice that the dividends may have been fraudulent in nature." *Id.* at 1241. Further, in a related action between the parties, the defendant had employed obstructionist tactics during pre-judgment discovery to prevent its witnesses from answering questions about the dividends or its financial condition. *Id.* at 1241-42. The Chancery Court held that, under these facts, the plaintiff did not have sufficient information to place it on notice of the dividends and their fraudulent nature. *Id.* at

16

1242.  Rather, the one-year discovery period under § 1309(1) was not triggered until several years later when the defendant finally produced documents "disclos[ing] for the first time (i) that it had paid approximately \$117 million in dividends before 2011 and (ii) its total revenue since formation." *Id.* at 1244.  Because the plaintiff filed its complaint less than one year after the document production, the actual fraudulent transfer claims were timely.  *See id.*

Here, like in *JPMorgan Chase Bank*, prior to March 2021 the Trustee knew only that some relatively minimal amount of transfers had been made to ANConnect's related entities, but did not know the full scope of Transfers that had actually been made or have detailed information concerning the specifics of the Transfers or the finances of ANConnect and its related entities. ANConnect stonewalled not only the Trustee's attempts to obtain more information at the Settlement Meeting,[11] but also his attempts to take discovery related even to the ANConnect Transaction (much less other subjects like ancillary internal transfers) in the 2018 Action.  Indeed, in the 2018 Action, ANConnect sought partial summary judgment based on an argument that it was unnecessary to conduct discovery at all.  *See* A168-169, Plaintiff's Memorandum in Support of His Request to Allow

---

[11]    *See* A784-785, Coren Decl. at ¶¶ 7-8; A1122-1131, Miller Dep. at 10:19-11:9, 13:5-19:19 (Trustee's testimony that he asked for information concerning the purported "minor transfers" that were made and ANConnect's finances, but never received it—leading him to believe ANConnect's claims of being "judgment-proof" were just posturing).

Discovery Pursuant to Federal Rule of Civil Procedure 56(d) filed in 2018 Action (summarizing the Trustee's efforts to begin discovery, which were rebuffed by ANConnect); A193-195, Coren Dec. from 2018 Action at ¶¶ 4-10 (further describing ANConnect's efforts to stonewall discovery in the 2018 Action); A295-302 (Opinion and Order denying ANConnect's premature summary judgment motion).[12]

These facts were more than sufficient to place before the fact-finder at trial disputed issues of material fact underlying Appellees' statute of limitations affirmative defense that the one-year discovery period under 6 Del. C. § 1309(1) (or Tex. Bus. & Com. Code § 24.010(a)(1)) began to run in September 2018 (at the Settlement Meeting)—because at that time (and up until March 2021) the Trustee had only inaccurate and incomplete information concerning the Transfers and the Appellees were actively resisting the Trustee's efforts to obtain more information. *See JPMorgan Chase Bank*, 213 A.3d at 1241-42, 1244. Because the Trustee presented facts supporting his position that the one-year period was not triggered until ANConnect produced documents in March 2021 revealing that $24 million had been upstreamed to related entities (following which the Trustee acted promptly in commencing the 2021 Action), the Bankruptcy Court should have denied summary judgment on the Appellees' timeliness arguments. *See Union Tank Car Co. v.*

---

[12]    Even during discovery in the 2021 Action, the Appellees refused to identify transfers made to affiliates. *See* A1448-1449 (Appellees' blanket objection to interrogatories requesting ANConnect to identify transfers to its affiliates).

*Maxwell*, 2021 WL 2044345, at *7 (S.D. Tex. May 21, 2021) (denying defendants' motion for summary judgment on timeliness issue, where a previous vague disclosure in another action did not provide sufficient notice, and plaintiff only learned of the transfers once defendants "reluctantly and belatedly" produced financial information) (applying § 24.010(a)(1) of TUFTA).

## II. The Bankruptcy Court Erred In Applying The Discovery Rule By Usurping The Role Of The Factfinder To Hold That The Trustee Did Not Act With Reasonable Diligence In Investigating His Claims

Even assuming that Appellees' misstatements during settlement talks were sufficient to put the Trustee on notice both of the challenged transfers (which were described as exponentially lower than they actually were) and their fraudulent nature (nothing was discussed concerning this requirement), the Bankruptcy Court's determination that the Trustee "cannot show that he acted with reasonable diligence in investigating his claims" (A1532) was erroneous because it required weighing of evidence and findings as to reasonableness that are squarely within the province of the jury, not the court on summary judgment. *See, e.g., Est. of Ewers*, No. 01-21-00331-CV, 2024 WL 333334, at *9 (Tex. App. Jan. 30, 2024) ("the issues of discovery and diligence ordinarily present questions of fact for the factfinder, rather than matters of law for the court").

In the wake of the September 2018 Settlement Meeting, Attorney Coren "requested that ANConnect, which is a private company with nonpublic finances,

19

support the contention that only one or two million dollars was upstreamed to its parent entities and that it was insolvent by providing supporting financial documents. Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment. A785, Coren Dec. at ¶ 8.  Appellees' unequivocal refusal to support the contentions they made during the Settlement Meeting served as confirmation of Mr. Coren's conclusion that the statements were "incidental puffery typical to negotiation," *id.* at ¶ 9, and left Appellant with nowhere to turn to get the pertinent information.

Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), which generally allows a Trustee to issue requests for documents and testimony outside the context of litigation, could not be used to obtain information from Appellees because the Trustee had already commenced litigation in the 2018 Action.  Given the broad scope of requests and examinations made under Rule 2004, the rule is unavailable when the examination or production request relates to matters being litigated in a pending adversary proceeding.  *See, e.g., In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).  The "pending proceeding rule" limits the use of Rule 2004 after an adversary proceeding or other litigation has commenced due to concern that a litigant might receive an unfair advantage in litigation because requests for production and examinations under Rule 2004 lack some of the procedural safeguards that exist for discovery conducted in pending litigation.  *Id.* at 51.  Accordingly, having already

20

instituted fraudulent transfer litigation against ANConnect in the 2018 Action, information concerning further transfers would clearly have been subject to the pending proceeding rule, and the Trustee was unable to request information through Rule 2004.

That left formal discovery under the Federal Rules of Civil Procedure in the 2018 Action as the only vehicle under which the Trustee could obtain the requested information from Appellees, and the Trustee employed it. But Appellees actively stonewalled the Trustee's efforts to take that discovery and sought partial summary judgment to avoid it, alleging that discovery was unnecessary and a waste of resources. Appellees' stonewalling of the Trustee's discovery efforts prompted the Trustee's formal request to allow discovery pursuant to Federal Rule of Civil Procedure 56(d). *See* A168-169, Plaintiff's Memorandum in Support of His Request to Allow Discovery Pursuant to Federal Rule of Civil Procedure 56(d) filed in 2018 Action (summarizing the Trustee's efforts to begin discovery, which were rebuffed by ANConnect); A193-195, Coren Dec. from 2018 Action at ¶¶ 4-10 (further describing ANConnect's efforts to stonewall discovery in the 2018 Action). As set forth in the Trustee's request, even as late as April 29, 2020, Appellees' attorneys were using their premature summary judgment motion as an excuse for why discovery could not begin. *See id.*; *see also* A259 (4/7/20 email from Appellees' counsel stating that ANConnect did not agree that "the parties have held/concluded

their scheduling conference or [that] discovery between the parties should commence at this time"); A268 (4/29/20 email from Appellees' counsel stating that "we fundamentally disagree with . . . your view that discovery can commence now").[13]

Discovery in the 2018 Action did not begin until after the Bankruptcy Court was forced to intervene, *see* A168-169, and it was not until March 2021, when ANconnect made its document production in the 2018 Action, that the Trustee and his counsel was able to discover that the actual amount upstreamed by ANConnect to its related entities was nearly $24 million. *See* A785-786, Coren Decl. at ¶ 10; A1131-1132, Miller Dep. at 19:6-20:7; A1390, Homony Dep. at 82:10-13; A1440-1442 (3/25/21 letter from ANConnect attorney conveying "ANConnect's first production"); A1080-1083 and A1095-1097 (documents produced by ANConnect on 3/25/21 as part of its first production that for the first time disclosed to the Trustee the existence and magnitude of the transfers at issue).

Accordingly, the Bankruptcy Court erred when it held as a matter of law that the Trustee reasonably should have discovered both the magnitude and fraudulent nature of the challenged transfers prior to receiving discovery in the 2018 Action.

---

[13] Appellees' continuing effort to hide the ball as to transfers is further demonstrated by discovery conducted in this adversary proceeding, when ANConnect refused to take even the basic step of identifying the transfers it made to its affiliates during the time frame at issue. *See* A1444-1452 at pp. 5-6 (Defendants' blanket objection to interrogatories requesting ANConnect to identify transfers to its affiliates).

That determination was not for the Bankruptcy Court to make, it is one for the jury at trial.

## III.    The Bankruptcy Court Decision Will Have A Chilling Effect On Settlement Discussions In This Circuit

Allowed to stand, the Bankruptcy Court's holding will have a chilling effect on settlement discussions in bankruptcy courts and other courts in this Circuit and beyond. The judicial system encourages early settlement discussions to unclog judicial dockets and promote the interests of justice, yet bankruptcy trustees and other litigants must now fear that adverse consequences could follow based on statements made during those negotiations. Indeed, Attorney Coren testified that, in this case, he "did not take the statements of [Appellees] to be factual statements, but rather incidental puffery typical to negotiation," a conclusion supported by his "extensive experience representing Trustees in cases similar to the Companion Adversary Proceeding, [where] it is typical for defendants to 'cry poor' during settlement discussions," and where he "represented Trustees who obtained significant financial recoveries from defendants who previously claimed to be judgment proof." A785, Coren Dec. at ¶ 9.

Attorney Coren's conclusion that Appellees' statements during settlement talks were mere puff is further supported by "the relaxed rules concerning candor in the context of settlement discussions." *See id.* (citing Delaware Lawyers' Rule of Professional Conduct 4.1, cmt. [2] (stating that, although a lawyer is generally not

23

allowed to knowingly make a false statement of material fact or law to a third person, "[w]hether a particular statement should be regarding as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are ordinarily in this category . . . .")).

The Bankruptcy Court's decision upends these "generally accepted conventions in negotiation," and sends a message to the bar that settlement discussions need to be approached with trepidation because a party's falsely "crying poor" during those discussions could lead to the subsequent loss of the ability to bring a fraudulent transfer claim, as happened here. Such a result is contrary to the Bankruptcy Code, the Federal Rules of Civil Procedure and supporting caselaw, which strongly "encourage facilitating the settlement of cases." *See, e.g., Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993))).

## CONCLUSION

For the reasons stated above, the Bankruptcy Court's grant of summary

judgment in favor of the Appellees should be reversed.


Dated: July 3, 2024                    Respectfully submitted,


                                        /s/ John T. Carroll, III
                                       _____
                                       John T. Carroll, III (DE Bar No. 4060)
                                       **COZEN O'CONNOR**
                                       1201 North Market Street
                                       Suite 1001
                                       Wilmington, DE 19801
                                       Tel: (302) 295-2028
                                       Fax: (302) 295-2013
                                       jcarroll@cozen.com

                                       -and-

                                       Steven M. Coren *(pro hac vice)*
                                       **COREN & RESS, P.C.**
                                       Two Commerce Square
                                       2001 Market Street, Suite 3900
                                       Philadelphia, PA 19103
                                       Tel: (215) 735-8700
                                       Fax: (215) 735-5170
                                       scoren@kcr-law.com

                                       *Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitations set forth in Federal Rule of Bankruptcy Procedure 8015(a)(7) and this Court's Standing Order Regarding Briefing in All Cases in that the substantive portions of the brief contain 5,708 words as counted by Microsoft Word and the brief was prepared in 14-point Times New Roman font.

/s/ John T. Carroll, III
John T. Carroll, III (DE Bar No. 4060)
**COZEN O'CONNOR**
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Fax: (302) 295-2013
jcarroll@cozen.com

-and-

Steven M. Coren *(pro hac vice)*
**COREN & RESS, P.C.**
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com

*Counsel for Appellant*