# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OUR ALCHEMY, LLC, *et al.*,<br><br><div align="right">Debtors.</div> | Case No. 16-11596 (JTD)<br><br>Adv. Pro. No. 21-51420 (JTD) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC,<br><br><div align="right">Appellant,</div><br>v.<br><br>ANDERSON MEDIA CORPORATION, ANCONNECT, LLC, and ANDERSON MANAGEMENT SERVICES, INC.<br><br><div align="right">Appellees.</div> | Bankruptcy Appeal<br><br>DE BAP No. 24-00007<br><br>Civil Action No. 24-cv-00243-CFC |

## APPELLEES' ANSWERING BRIEF

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Evelyn J. Meltzer (DE No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302)-777-6532
Facsimile: (302)-421-8390
evelyn.meltzer@troutman.com
*Counsel for Appellees*

**HUNGELING RUBENFIELD LAW**

David J. Hungeling (*pro hac vice*)
Georgia State Bar No. 378417
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 574-2466
Facsimile: (404) 574-2467
david@hungelinglaw.com
*Counsel for Appellees*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

TABLE OF AUTHORITIES ...................................................................... iii

APPELLEES' CORPORATE DISCLOSURE STATEMENT ..........................1

PRELIMINARY STATEMENT .................................................................2

JURISDICTIONAL STATEMENT..............................................................4

LIMITED ISSUE ON APPEAL ................................................................4

STANDARD OF APPELLATE REVIEW ....................................................5

STATEMENT OF THE CASE...................................................................7

      A.    ANC'S Loan from Bank of America ................................8

      B.    ANC'S Sale of Video Distribution Business to Alchemy ................9

      C.    A Post-Closing Dispute Arises and ANC Sues Alchemy ..............10

      D.    Anderson Media Purchases BofA Loan and ANC Pays It Off .....11

      E.    ANC Sells Its Remaining Assets.....................................12

      F.    Trustees Sues ANC for Fraud to Unwind the ANC Acquisition ..13

      G.    ANC Discloses Its Financial Condition to the Trustee .................14

SUMMARY OF THE ARGUMENT ..................................................16

ARGUMENT ........................................................................17

i

**I. THE BANKRUPTCY COURT CORRECTLY GRANTED SUMMARY JUDGMENT BECAUSE THE UNDISPUTED EVIDENCE SHOWED THE TRUSTEE FILED THE 2021 COMPLAINT AFTER THE EXPIRATION OF THE UFTA'S ONE-YEAR SAVINGS CLAUSE** ................................................. 17

**A.    ANC'S Disclosures at the 2018 Meeting are Admissible** ................ 17

**B.    The Trustee Failed to Timely File the 2021 Complaint** .................. 19

**1.  The Trustee had notice of the possible claim** ........................................ 23

**2.  The Trustee did not take reasonable steps to investigate** ............... 28

**II. CONCLUSION** ........................................................................................ 31

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)...................................... 5, 6, 7

*B&B Hardware, Inc. v. Fastenal Co.,* 688 F.3d 917 (8th Cir. 2012) .....................18

*Basic Capital Mgmt. v. Dynex Capital, Inc.,*
    976 F.3d 585 (5th Cir. 2020) ................................................................... 22, 23, 26

*Basic Capital Mgmt. v. Dynex Capital, Inc.,*
    2019 U.S. Dist. LEXIS 186739 (N.D. Tex. Oct. 28, 2019) ................................23

*Burkhart v. Genworth  Fin., Inc.*, 250 A.3d 842 (Del. Ch. 2020) ..........................21

*Cadle Co. v. Wilson,* 136 S.W.3d 345 (Tex. App. 2004) .......................................21

*Duran v. Henderson*, 71 S.W.3d. 833 (Tex. App. 2002)........................................21

*In re Wash. Mut., Inc.*, 408 B.R. 45 (D. Del. 2009)...............................................29

*JPMorgan Chase Bank, N.A. v. Ballard,*
    213 A.3d 1211 (Del. Ch. 2019) ............................................................ 21, 26, 27

*Kach v. Hose*, 589 F.3d 626 (3rd Cir. 2009)..........................................................26

*Miller v. ANConnect, LLC, et al.*,
    Adv. Pro. No. 18-50633 (JTD) (Bankr. D. Del.)..................................................3

*Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*,
    642 B.R. 155 (Bankr. D. Del. 2022).....................................................................20

*Miller v. Anderson Media Corp., et al.*,
    Adv. Pro. No. 21-51420 (JTD) (Bankr. D. Del.)..................................................7

*Nagle v. Alspach*, 8 F.3d 141 (3rd Cir. 1993)........................................................18

*Pirtle v. Kahn*, 177 S.W.3d 567 (Tex. Ct. App. 2005) ..........................................21

*Riley v. Kennedy,* 553 U.S. 406, 419 (2008).............................................................4

*Ruebeck v. Hunt*, 142 Tex. 167, 176 (1943) ..........................................................21

*Santander Bank, N.A. v. Branch Banking & Trust Co.*,
  2020 U.S. Dist. LEXIS 572 (M.D. Pa. Jan. 3, 2020) ..........................................27

*Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*,
  111 F.3d 1284 (6th Cir. 1997)...................................................................................18

*Union Tank Car Co. v. Maxwell*,
  2021 U.S. Dist. LEXIS 96795, (S.D. Tx. May 21, 2021) ...................................27

*Westwide Winery, Inc. v. SMT Acquisitions, LLC*,
  511 F. Supp. 3d 256 (E.D.N.Y. 2021).....................................................................18

*Yeransian v. Markel Grp. Inc.*,
  U.S. App. LEXIS 14220 (3rd Cir. June 11, 2024) ...................................................5

*Zenner v. Lone Star Striping Paving, L.L.C.*,
  371 S.W.3d 311 (Tex. Ct. App. 2012) ................................................. 21, 22, 23

## **Statutes**

28 U.S.C. § 158...........................................................................................................4

28 U.S.C. §§ 157.........................................................................................................4

28 U.S.C. §§ 1334.......................................................................................................4

6 Del. Code § 1304 ................................................................................................8, 13

6 Del. Code § 1309 ...................................................................................................20

Tex. Bus. & Com. Code § 24.005............................................................................8

Tex. Bus. & Com. Code § 24.010............................................................................20

## **Other Authorities**

1 Weinstein's Evidence Manual § 7.05 (2024) ....................................................18

## **Rules**

Fed. R. Evid. 408 ............................................................................... 5, 18, 19

Appellees, Anderson Media Corporation ("Anderson Media"), ANConnect, LLC ("ANC"), and Anderson Management Services, Inc. ("Anderson Management") (collectively, the "Anderson Parties"), file this Appellees' Brief in opposition to the appeal of the Chapter 7 Trustee (the "Trustee") for Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC (collectively, the "Debtors") of the Bankruptcy Court's February 13, 2024 Memorandum Opinion and Order (the "Order")[1] granting summary judgment to the Anderson Parties on the Uniform Fraudulent Transfer Act Claim in the underlying adversary action, and show as follows:

## APPELLEES' CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Rule 8012 of the Federal Rules of Bankruptcy Procedure, Appellees Anderson Media, ANConnect, and Anderson Management state as follows:

1. Anderson Media is a non-public corporation that is owned by individuals and trusts and is the parent corporation of ANConnect and Anderson Management.

---

[1] A1519-32, Order.

2. ANConnect is wholly owned by Anderson Media.

3. Anderson Management is wholly owned by Anderson Media.

4. No publicly held corporation owns 10% or more of the stock of Anderson Media, ANConnect, or Anderson Management.

## **PRELIMINARY STATEMENT**

The Bankruptcy Court correctly granted summary judgment to the Anderson Parties because the Trustee failed to timely file an action under the Uniform Fraudulent Transfer Act arising out of ANC's payments to Anderson Media, its parent company, and Anderson Management, an affiliate.

In 2015 and 2016, ANC, a longtime distributor of videos, books and music, sold its lines of business to three different buyers in separate asset transactions as part of a publicly-disclosed cessation of operations. In the first of these transactions, which is the subject of the Trustee's June 2018 Avoidance Action (defined below), Alchemy purchased ANC's video and digital assets. During the next year the assets performed as expected and generated $8.487 million in earnings before interest, taxes and depreciation ("EBITD"). Unfortunately for Alchemy, these positive financial results were too little for it to overcome the issues existing in the legacy portion of its business, which ultimately led to its bankruptcy filing in July 2016. Thereafter, ANC completed sales of its other assets, paid off its debts, including debts owed to the other Anderson Parties, and wound down its operations by 2017.

-2-

In June 2018, the Trustee filed an adversary proceeding (*Miller v. ANConnect, LLC, et al.*, Adv. Pro. No. 18-50633 (JTD) (Bankr. D. Del.), the "June 2018 Avoidance Action") wherein he claimed, *inter alia*, that the asset sale to Alchemy was fraudulent. In response, in September 2018, ANC and the Trustee met in person to discuss a potential resolution of the Trustee's claims (defined below as the "2018 Meeting"). At the 2018 Meeting, ANC disclosed to the Trustee and his advisors that it had made payments to Anderson Media and Anderson Management and that, as a result, it could not satisfy a material judgment. The Trustee did not act on this information until December 2021 when he filed the December 2021 Avoidance Action (defined below), which is more than four years after the alleged fraudulent transfers took place. Because the Trustee did not commence the December 2021 Avoidance Action within the Uniform Fraudulent Transfer Act's four-year statute of limitations *or* one-year savings clause, the Bankruptcy Court correctly entered summary judgment for the Anderson Parties.[2]

---

[2] The Anderson Parties also argued in their motion for summary judgment that the Trustee lacked any evidence that the challenged payments were fraudulent or that that ANC was insolvent at the time of the transfers. *See* Appellant's Appendix [D.I. 18] A351-58, Memorandum of Law. References to this appendix shall be designated with the letter "A" followed by the page number. Although the Bankruptcy Court's opinion did not address this argument (A1521, Order at p. 3 n. 7), the Trustee's lack of evidence of fraudulent intent and insolvency are fatal to his claims even if they were timely filed.

## JURISDICTIONAL STATEMENT

The Bankruptcy Court's Order in the December 2021 Avoidance Action, entered on February 13, 2024, following briefing and oral argument resolved "the litigation on the merits and le[ft] nothing for the court to do but execute the judgment." *Riley v. Kennedy,* 553 U.S. 406, 419 (2008) (internal quotations omitted). This Court thus has appellate jurisdiction over this appeal. 28 U.S.C. § 158(a)(1). The Trustee filed the notice of appeal on February 22, 2024.[3]

The Bankruptcy Court had core jurisdiction over the December 2021 Avoidance Action pursuant to 28 U.S.C. §§ 157(b), 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012.

## LIMITED ISSUE ON APPEAL

The issue presented on appeal is whether the Trustee's inaction, during his multi-year delay in challenging ANC's payments to affiliates, could qualify as reasonable diligence for purposes of the Uniform Fraudulent Transfer Act's one-year savings clause.

The Trustee posits that additional issues on appeal are whether the Bankruptcy Court "usurp[ed] the role of the factfinder to hold that the Trustee did not act with

---

[3] *See* A1609.

-4-

reasonable diligence" and whether ANC's disclosures "made during a settlement meeting put the Trustee on affirmative notice of potential claims."[4] However, these questions are subsumed within the above stated issue. It is also noteworthy that, in Appellant's Opening Brief [D.I. 17], the Trustee abandoned his appeal regarding the admissibility of ANC's disclosures under Fed. R. Evid. 408.[5]

## **STANDARD OF APPELLATE REVIEW**

This Court reviews a decision granting a motion for summary judgment *de novo*. *See Yeransian v. Markel Grp. Inc.,* No. 23-2234, 2024 U.S. App. LEXIS 14220 at *2, n.1 (3rd Cir. June 11, 2024). The Anderson Parties disagree with the Trustee's contention that the Bankruptcy Court made "factual findings."[6] Rather, the Bankruptcy Court correctly noted that its role "is to 'determine whether there is a genuine issue for trial.'"[7]

Moreover, the Trustee mischaracterizes the opinion in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).[8] The Trustee cites the *dissent* (without noting he

---

[4] A1601.

[5] *See infra*, Argument Part I.A.

[6] *See* Doc. 17, Appellant's Opening Brief at pp. 2, 14, 18-19.

[7] A1521, Order at p. 3 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

[8] *See* Doc. 17, Appellant's Opening Brief at p. 2.

cites a dissenting opinion) in *Anderson* to support his argument that the Court is required to "view all facts in the light most favorable to Appellant ***and to resolve any doubts as to the existence of genuine issues of fact against Appellees***."[9] But that is not what Justice Brennan wrote in his dissent. Rather, in his dissent, Justice Brennan wrote: "These holdings in no way undermine the doctrine that ***all evidence must be construed in the light most favorable to the party opposing summary judgment***."[10]

The point the Trustee misses is that the trial judge does not *weigh* the evidence. The trial judge determines whether there is *sufficient* evidence *in dispute* to create a genuine issue for trial. In the majority decision in *Anderson,* Justice White explained:

> Our prior decisions may not have uniformly recited the same language in describing genuine factual issues under Rule 56, but it is clear enough from our recent cases that ***at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.***[11]

Because the Trustee failed to "demonstrate the existence of a genuine issue for

---

[9] *Id.* (***emphasis added***).

[10] *Anderson,* 477 U.S. at 261 n.2 (Brennan, J. *dissenting*) (***emphasis added***).

[11] *Anderson,* 477 U.S. at 249 (***emphasis added***).

trial[,]"[12] and because the Trustee's own admissions of those facts can lead to only one legal result, the Bankruptcy Court correctly granted summary judgment.

## STATEMENT OF THE CASE

The Trustee commenced the adversary proceeding (*Miller v. Anderson Media Corp., et al.,* Adv. Pro. No. 21-51420 (JTD) (Bankr. D. Del.), the "December 2021 Avoidance Action") on December 29, 2021, seeking (1) to avoid and recover certain alleged fraudulent transfers made by non-debtor ANC to Anderson Media and Anderson Management more than 5 years prior (Cause of Action I); (2) damages for alleged claims against certain of the Anderson Parties' directors and officers (the "Management Defendants") for breach of fiduciary duties (Cause of Action II); and (3) damages for alleged claims against the Management Defendants for aiding and abetting breach of fiduciary duties (Cause of Action III).[13]

The Bankruptcy Court dismissed all claims asserted in Cause of Action II and III and the Trustee's constructive fraud claim in Cause of Action I of the Trustee's 2021 Complaint. *See* Memorandum Opinion and Order entered June 27, 2022.[14] As

---

[12] A1522, Order at p. 4.

[13] *See* A291-95, Trustee's Complaint in the December 2021 Avoidance Action ("2021 Complaint") ¶¶ 66-88. This action is the second action brought on behalf of the Debtors' estates against ANC. Earlier, on June 29, 2018, the Trustee commenced the June 2018 Avoidance Action, which is more fully discussed *infra*.

[14] Appellees' Appendix AS1, Memorandum Opinion and Order (December 2021 Avoidance Action, D.I. 20). References to Appellees' Appendix shall be designated

a result, the Trustee's sole remaining claim was for actual fraud under the Uniform Fraudulent Transfer Act (the "UFTA Claim").[15] After discovery was completed, the Anderson Parties moved for summary judgment on the sole remaining UFTA Claim, which the Bankruptcy Court granted in the Order.[16]

The Bankruptcy Court's Order provides an accurate and complete discussion of the dispositive facts for this appeal, amply supported by citations to the record. Appellees provide the following additional discussion to provide further context and to correct several misstatements by the Trustee.

**A. ANC's Loan from Bank of America.**

In 2013, ANC and four affiliates entered into a revolving $150,000,000 Loan and Security Agreement wherein Bank of America, N.A., served as Agent ("BofA

---

with the letters "AS" followed by the page number. Notably, the Trustee did not appeal these rulings.

[15] The Trustee pled this claim under the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), 6 Del. C. § 1304(a)(1). A291. The Anderson Parties determined that Texas law applies to this action and, thus, the claim falls under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code § 24.005(a)(1) (collectively with DUFTA, the "UFTA"), but noted that summary judgment would result under either statute. *See* A345-46 and A351 at n. 96, Memorandum of Law. The Bankruptcy Court ruled that there is no substantive difference between the two, and cited case law interpreting both statutes. A1522-23 and A1528, Order.

[16] A1519-32, Order.

Loan").[17] The BofA loan was secured by all of ANC's assets, including those sold to Alchemy.[18]

### B. ANC's Sale of Video Distribution Business to Alchemy.

In early 2015, Alchemy approached ANC about its interest in purchasing certain of ANC's video and digital business in an asset purchase transaction.[19] Following an arm's length negotiation, wherein Alchemy used multiple third-party advisors that included BDO to perform due diligence of ANC and SunTrust Robinson Humphrey as its investment banker, ANC and Alchemy executed an Asset Purchase Agreement dated May 7, 2015 ("APA").[20] The transaction closed on July 9, 2015 (the "ANC Acquisition") with Alchemy making a cash payment of $29,888,124.40 ("Closing Payment") and agreeing to make additional payments for purchase price adjustments to be determined after the closing.[21]

---

[17] A362, A373-83, Declaration of Jay Maier dated June 9, 2023 ("Maier Dec.") at ¶ 7 & Ex. 1.

[18] A362, A421 Maier Dec. at ¶ 7 & Ex.1.

[19] A363, Maier Dec. at ¶ 8; *see also* A70-71, June 2018 Avoidance Action Complaint ("2018 Complaint") at ¶¶ 55-58.

[20] A363, Maier Dec. at ¶ 9; *see e.g.*, A728-A730, A732-A737, Deposition of William Homony (the "Homony Depo."), p. 20:24-p.21:3; p. 26:3-p. 27:12; p. 41:2-13; p. 45:16-25; p. 46:2-p. 47:20.

[21] A363, Maier Dec. at ¶ 9; *see also* A79, A83, 2018 Complaint at ¶¶ 83 and 102.

The Closing Payment was paid directly to Bank of America to reduce the amounts owing under the BofA Loan.[22]

### C. A Post-Closing Dispute Arises and ANC Sues Alchemy.

Following the closing of the ANC Acquisition, the parties attempted to work through the adjustments, however, a number of disputes arose.[23] Nevertheless, at all times, Alchemy acknowledged that it owed millions of dollars to ANC.[24] Ultimately, Alchemy never paid ANC the full Purchase Price as required under the APA and also failed to pay for services rendered under two other agreements entered into in connection the ANC Acquisition.[25]

As a result, on February 23, 2016, ANC and an affiliate, Anderson Merchandisers, LLC, filed suit against Alchemy in the Superior Court of Delaware in the matter styled, *ANConnect, LLC and Anderson Merchandisers, LLC v. Our*

---

[22] A363, Maier Dec. at ¶ 10; *see also* A485-89, July 9, 2015 Consent and Lien Release Confirmation Letter, which is attached to the Maier Dec. at Exhibit 2; *and* A679-80, Disbursement Request dated July 14, 2015, which is attached to the Maier Dec. at Exhibit 3 (directing SunTrust, as escrow agent, to wire $5,355,812 (plus any accrued interest) to Bank of America). The parties agreed to hold this portion of the Purchase Price in escrow until ANC was able to secure a vendor number for Alchemy with Best Buy. A363, Maier Dec. at ¶ 10; *see also* A682-86, Amendment No. 2 to APA, a copy of which is attached to the Maier Dec. at Exhibit 4.

[23] A83, 2018 Complaint ¶ 102.

[24] A364, Maier Dec. at ¶ 12.

[25] A364, Maier Dec. at ¶¶ 12-14.

*Alchemy, LLC,* Superior Court of Delaware, New Castle County, Case No.: N16C-02-152 ("State Court Action").[26] At the time of that filing, Alchemy owed ANC and Anderson Merchandisers the net amount of more than $9 million under the three agreements.[27]

On April 11, 2016, Alchemy filed an Answer, Affirmative Defenses, and Counterclaims alleging that ANC and Anderson Merchandisers breached the APA and one of the other agreements.[28] Notwithstanding Alchemy's affirmative defenses and counterclaims, Alchemy always acknowledged that it owed more money to ANC than vice versa.[29] Accordingly, based upon the claims asserted by Alchemy and information available at that time, Alchemy was not a net creditor of ANC (or Anderson Merchandisers).[30]

### D. Anderson Media Purchases BofA Loan and ANC Pays It Off.

On April 29, 2016, Anderson Media acquired the BofA Loan for $14,671,029—the full balance owing at that time—and became the lender

---

[26] *Id.* at ¶ 15.

[27] *Id.*

[28] *Id.* at ¶ 16.

[29] *Id.*

[30] *Id.*

thereunder.[31] On May 2, 2016, Anderson Media advanced $8,500,000 to ANC in its role as lender under the BofA Loan.[32] Thereafter, ANC paid Anderson Media $10,000,000 (on May 31, 2016) and $13,171,029 (on June 10, 2016), thereby satisfying all amounts owing under the BofA Loan.[33]

### E. ANC Sells Its Remaining Assets.

In furtherance of its wind-down and liquidation, on April 29, 2016, ANC sold its book distribution business to Readerlink Distribution Services, LLC for net proceeds totaling approximately $56 million and, effective July 8, 2016, ANC sold its music and internet (direct to consumer) business to Alliance Entertainment Holding Corporation for net proceeds totaling approximately $21 million.[34] Each of these sales, and ANC's layoff of staff and cessation of operations, were publicly disclosed in press releases and news articles at or around the time each transaction

---

[31] A365, Maier Dec. at ¶ 17; *see also* A688-96, Omnibus Assignment and Acceptance dated April 29, 2016, Bank of America, N.A., and Anderson Media Corporation (and affiliates), which is attached at Exhibit 5 of the Maier Dec. Although Anderson Media became the lender under the BofA Loan, to avoid inconsistencies with respect to the obligations owing thereunder, the term "BofA Loan" will be used to refer to obligations owing under or in respect thereof.

[32] A365, Maier Dec. at ¶ 17.

[33] *Id.*; *see also* A698 Anderson Media's General Ledger for the period 1/3/15 through 12/30/16 (evidencing these transactions), which is attached at Exhibit 6 of the Maier Dec.

[34] A365, Maier Dec. at ¶ 18.

closed.[35] ANC did not conceal or hide from its creditors that it was liquidating its assets and would cease operations once the assets were sold.[36]

### F. Trustee Sues ANC for Fraud to Unwind the ANC Acquisition.

On July 1, 2016, about one year after the closing of the ANC Acquisition, the Debtors filed for Chapter 7 bankruptcy.[37] During that year the assets performed as expected and generated $8.487 million in EBITD.[38]

On June 29, 2018, the Trustee commenced the June 2018 Avoidance Action asserting, among other things, that (1) the ANC Acquisition is avoidable as a constructive and actual fraudulent transfer under Sections 544, 548 and 550 of the Bankruptcy Code as well as DUFTA §§ 1304(a) and (2) that Alchemy is entitled to damages from ANC and others in excess of $50 million arising out of the ANC Acquisition.[39] Upon its review of the claims raised in the June 2018 Avoidance

---

[35] A365-66, Maier Dec. at ¶ 19; *see also* A699-708, releases and articles attached at Exhibits 7-9 attached to the Maier Dec., *and* A286, 2021 Complaint at ¶¶ 37 and 38.

[36] A366, Maier Dec. at ¶ 20.

[37] *See* A1520.

[38] AS24-116, Miller Depo. Exhibits 15, 16, and 17 (December 2021 Avoidance Action, D.I. 45-3).

[39] A369, Maier Dec. at ¶ 29.

Action, ANC learned for the first time that Alchemy, through the Trustee, claimed to be a net-creditor of ANC.[40]

### G. ANC Discloses Its Financial Condition to the Trustee.

On September 13, 2018, Jay Maier and ANC's counsel in the June 2018 Avoidance Action, Grant Stein, met with the Trustee, Bill Homony, the Trustee's financial expert, and Stephen Coren, counsel to the Trustee, in Philadelphia, Pennsylvania to discuss the June 2018 Avoidance Action and to explore settlement of the Trustee's claims (the "2018 Meeting").[41] ANC asked for the 2018 Meeting to provide full disclosure to the Trustee of ANC's financial condition and its inability to satisfy a material judgment.[42]

During the 2018 Meeting, Mr. Maier disclosed to the Trustee, Mr. Coren, and Mr. Homony, that ANC had sold all of its operating assets in 2015 and 2016 and had ceased operations by 2017.[43] Mr. Maier further noted that ANC had fully satisfied

---

[40] *Id., Maier Dec.* at ¶ 30. Before this date, ANC had no basis to believe it owed any net amounts to Alchemy, *id.*, and thereafter ANC did not make any transfers to Anderson Media or Anderson Management other than to add to its intercompany balance with Anderson Media, *id.*, Maier Dec. at ¶ 31.

[41] A370, Maier Dec. at ¶ 32; *see also* A741, Homony Depo. p. 77:8-12.

[42] *Id.*

[43] *Id.*, Maier Dec. at ¶ 34; *see also* A742-44, Homony Depo. p.78:12-p. 79:19; p. 80:9-21.

all creditor claims and that there was about $3 million left in residual cash.[44] He also disclosed that the sale proceeds from the ANC Acquisition went to pay down the BofA Loan.[45] Mr. Maier also disclosed that Anderson Media and Anderson Services received several million dollars from ANC.[46] Mr. Maier made these disclosures so that the Trustee would understand that even if he were successful in the prosecution of his claims against ANC, there were limited assets to satisfy a judgment.[47] ANC was hopeful that an early settlement could be reached to avoid legal costs that would deplete ANC's limited remaining assets.[48]

In response to Mr. Maier's disclosures, both Mr. Homony and Mr. Coren asked several specific questions about the transfers from ANC, which Mr. Maier answered.[49] Among other inquiries, Mr. Homony asked who owned ANC and Mr. Maier disclosed that it was Anderson Media.[50]

---

[44] A370, Maier Dec. at ¶ 34.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] A371, Maier Dec. at ¶ 35.

[50] *Id.*

When the Trustee's counsel took Mr. Maier's deposition on September 29, 2022, in the June 2018 Avoidance Action, he did not ask a single question about transfers from ANC to Anderson Media or its affiliates.[51]  Rather, it was not until October 11, 2022, that the Trustee served discovery requests seeking information related to ANC's transfers to Anderson Media and its affiliates—more than four years after the 2018 Meeting.[52]

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court held that the undisputed evidence shows that "the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to

---

[51] *Id.*

[52] *Id.; see also* A710-17, Trustee's Omnibus Set of Requests for Production of Documents, which is attached to the Maier Dec. at Exhibit 10. Although the Trustee contends that ANConnect hid the ball by failing to identify transfers to its affiliates, (Appellant's Opening Brief p. 22 n.13), ANConnect's interrogatory response cited by the Trustee actually confirms that ANConnect made its records available to the Trustee. The fact that the Trustee did not seek access to that information because he considered it difficult to obtain is further evidence of his own failures. Appellant's Opening Brief p. 11.

investigate the possibility that he held a claim."[53]   Thus, the one-year savings clause

did not rescue the UFTA Claim from summary judgment.[54]

## ARGUMENT

I.   **THE BANKRUPTCY COURT CORRECTLY GRANTED SUMMARY JUDGMENT BECAUSE THE UNDISPUTED EVIDENCE SHOWED THE TRUSTEE FILED THE 2021 COMPLAINT AFTER THE EXPIRATION OF THE UFTA'S ONE-YEAR SAVINGS CLAUSE.**

### A.   ANC's Disclosures at the 2018 Meeting Are Admissible.

Although the Trustee's Statement on Appeal included the issue: "Whether the

Bankruptcy Court erred in ruling that statements made during a settlement

discussion between the parties were admissible with respect to a statutory time

---

[53] A1529, Order at p. 11 ("The statements made at the 2018 Meeting were not made in isolation but were made in the context of the parties' attempt to settle the Trustee's already existing litigation in which he alleges that Defendants had made other fraudulent transfers. Given that fact, there can be no reasonable debate about whether the revelations made at the 2018 Meeting that more transfers had been made should have set off alarm bells. In fact, the Trustee's own witness admitted that this was precisely his reaction when, at the 2018 Meeting, Defendants informed him that ANC was judgment proof.").

[54] A1532, Order at p. 14 ("The evidence the Trustee put forth does not demonstrate that he was unable to discover the alleged fraud, only that he chose not to do so. Because the Trustee cannot show that he acted with reasonable diligence in investigating his claims upon his awareness that the Defendants may have made unlawful transfers, he has not met his burden of establishing that he is entitled to the benefit of either DUFTA's or TUFTA's one-year savings clause.")

bar[,]"[55] the Trustee omitted this issue from Appellant's Opening Brief.[56] Therefore, the Trustee abandoned his appeal regarding the admissibility of ANC's disclosures from the 2018 Meeting. *Nagle v. Alspach*, 8 F.3d 141, 143 (3rd Cir. 1993) ("When an issue is either not set forth in the statement of issues presented *or* not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.") (emphasis added).[57] In addition, any such appeal would have been futile.[58] Thus, ANC's disclosures at the 2018 Meeting are undisputedly before the Court.

---

[55] A1601.

[56] Doc. 17.

[57] The Trustee makes a policy argument (s*ee* Doc. 17, Appellant's Opening Brief at pp. 23-24) but does not cite to a single case or discuss Fed. R. Evid. 408 (applicable in a bankruptcy case under Bankruptcy Rule 9017) or the Bankruptcy Court's extensive analysis of the issue in the Order (A1523-25).

[58] *See* Fed. R. Evid. 408 (prohibits introduction of evidence of an offer of compromise "to prove or disprove the validity or amount of a disputed claim," but such evidence can be admissible "for another purpose"). *See also* 1 Weinstein's Evidence Manual § 7.05 (2024) ("Rule 408(b) provides that the court may admit evidence of compromise offers and negotiations…to establish when the statute of limitations began to run"); *B&B Hardware, Inc. v. Fastenal Co.,* 688 F.3d 917, 920 (8th Cir. 2012) (holding there was no abuse of discretion by a district court that considered a draft complaint attached to a settlement demand letter for purposes of establishing when a statute of limitations began to run); *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997) ("Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim"); *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 265-66 (E.D.N.Y. 2021) ("The term 'disputed claim' refers to the claim subject to the settlement negotiations offered for

## B.    The Trustee Failed to Timely File the 2021 Complaint.

In seeking summary judgment, the Anderson Parties presented undisputed evidence showing that ANC disclosed to the Trustee at the 2018 Meeting: (1) that ANC had sold all its operating assets in 2015 and 2016 and had ceased operations by 2017; (2) that ANC had fully satisfied all creditor claims and that there was about $3 million left in residual cash; (3) that the sale proceeds from the ANC Acquisition went to pay down the BofA Loan; (4) that Anderson Media and Anderson Management received several million dollars from ANC; and (5) that Anderson Media owned ANC.[59] The Trustee presented no evidence contradicting any of these statements.

The Trustee also acknowledged that Mr. Maier told him that ANC had transferred several million dollars to its affiliates at the 2018 Meeting.[60] In addition, at the time of the meeting the Trustee had already filed a lawsuit claiming that the

---

admission…Rule 408 expressly permits admitting settlement negotiations offered for another purpose…[which] includes offering them in a claim different from the one subject to the negotiations.") (citations omitted and cleaned up).

[59] A370-71, Maier Dec. at ¶¶ 32-35.

[60] *See* A723, Miller Depo. p.13:12-16; A745, Homony Depo. p.81:7-8 ("I believe Grant [Stein] said a few million dollars was upstreamed."); A785, Declaration of Steven M. Coren ("Cohen Dec.") at ¶ 7 ("In response to an inquiry about upstreaming, Mr. Maier and Attorney Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only 'a million dollars or two.'")

ANC Acquisition should be avoided arising out of an alleged fraud by ANC. Thus, as a matter of law, ANC's various disclosures and the related circumstances, individually and collectively, alerted the Trustee to the possibility that he held a claim and placed him on notice sufficient to trigger his duty to take reasonable steps to investigate that claim for purposes of the UFTA's one-year savings clause. This is because the Trustee knew that ANC had paid millions of dollars to its affiliates, sold off its businesses and wound up its affairs while he also had already alleged claims that ANC had engaged in fraud through the June 2018 Avoidance Action.

A cause of action for actual fraud under the UFTA is extinguished unless the action is brought within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant. Tex. Bus. & Com. Code § 24.010 (a)(1); 6 Del. Code § 1309(1).

Here, it is undisputed that the alleged fraudulent transfers occurred in 2016—more than four years before the Trustee commenced the December 2021 Avoidance Action. Thus, to be timely, the Trustee must have brought this action within the UFTA's one-year savings provision. This provision defers accrual of a cause of action until the claimant knows, or through the exercise of reasonable diligence, should know of the facts giving rise to the cause of action. *See Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 642 B.R. 155, 163 (Bankr. D. Del. 2022);

*JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1240 (Del. Ch. 2019); *Zenner v. Lone Star Striping Paving, L.L.C.*, 371 S.W.3d 311, 315 (Tex. Ct. App. 2012); *Duran v. Henderson*, 71 S.W.3d. 833, 839 (Tex. App. 2002) (citing *Ruebeck v. Hunt*, 142 Tex. 167, 176 (1943)). It requires a plaintiff to pursue information about his injuries and the likely cause once he is apprised of facts that would make a reasonably diligent person seek information." *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 859-60 (Del. Ch. 2020); *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. Ct. App. 2005).

In fact, the Texas Supreme Court has "narrowed application of the discovery rule to a class of cases in which the injury was so concealed as to be ***effectively undetectable*** by the claimant without some type of expertise." *Cadle Co. v. Wilson*, 136 S.W.3d 345, 351 (Tex. App. 2004) (citing cases). Thus, the savings provision demands that a creditor investigate a possible injury once he is apprised of facts that would invite a reasonably diligent creditor to seek further information. *Cadle*, 136 S.W.2d at 353. Further, a plaintiff is confined to the four-year bar period when he had the opportunity to learn of a transfer through discovery, but he unreasonably neglected to act on it. *Zenner*, 371 S.W.3d at 316.

The facts in *Zenner* are particularly illustrative in this case. In *Zenner,* the Texas Court of Appeals held that because the plaintiff knew that the transferor both

owned an asset and disposed of that asset, the creditor was on inquiry notice to investigate the disposition of the proceeds:

> Lone Star knew that the Zenner Family Trust existed in 2004, and included the name of the trust and address of the beach house in its 2005 pleadings. According to Lone Star's CEO, Lone Star also knew that Eric Zenner's beach house—which he had owned free of encumbrances—had been transferred to the trust. Lone Star also learned that the beach house had been sold in May 2004, based on information obtained through a local realtor's website. ***These are facts that would prompt a reasonably diligent creditor to seek further information about the sale proceeds.***
>
> <p style="text-align:center">* * *</p>
>
> The record conclusively demonstrates that Lone Star was aware of facts surrounding the transfers that aggrieved its rights as a creditor when it learned in 2005 of the transfer of the beach house to the trust, its encumbrance, and its sale. As a matter of law, such facts would lead a reasonable creditor to inquire about the proceeds within the statute of repose.

*Zenner*, 371 S.W.3d at 315-317 (***emphasis added***).

Also instructive is a case from the Fifth Circuit, *Basic Capital Mgmt. v. Dynex Capital, Inc.*, 976 F.3d 585 (5th Cir. 2020). In *Basic Capital,* the creditor filed TUFTA claims in April 2017 after having knowledge of 25 transfers among affiliated companies within the debtor's corporate structure in the year 2000, which knowledge was gained through the creditor's review of the defendant's public 10-K and UCC filings in the early 2000s. *Id*. at 590-591. In addition, the creditors were told in a deposition in January 2003 that the debtor was no longer operating and had not held assets for over a year. *Id*. The trial court ruled that the one-year savings provision began to run on the date of the filing of the first public 10-K annual report

because "[o]nce filed, the plaintiffs could have reasonably discovered the alleged fraudulent nature of the 25 transfers[.]" *Basic Capital Mgmt. v. Dynex Capital, Inc.*, Civil Action No. 3:17-CV-01147-X, 2019 U.S. Dist. LEXIS 186739, at *13 (N.D. Tex. Oct. 28, 2019).

On appeal, the Circuit Court affirmed, holding that "[u]pon hearing that a defendant no longer has any assets, especially one being sued for millions of dollars, a reasonable plaintiff would make some sort of inquiry into the situation." *Id*. at 591. The court also reasoned that because the litigation between the parties "was ongoing when the deposition occurred, asking a few follow-up questions at the deposition, for example, would likely have borne fruit…Thus, following the January 2003 deposition—or even as part of that deposition—[the creditor] could have taken discovery about where [the defendant's] assets went." *Id*.

**1. The Trustee had notice of the possible claim.**

Here, as in *Zenner* and *Basic Capital*, it is undisputed that ANC's liquidation of its assets and cessation of operations was publicly disclosed.[61] Further, it is undisputed that no later than September 2018 the Trustee and Mr. Homony personally gained knowledge that ANC transferred millions of dollars to its affiliates and the payments' circumstances (*i.e*., the liquidation of ANC's assets) sufficient to

---

[61] *See* A699-708, releases and articles attached at Exhibits 7-9 attached to the Maier Dec., *and* A286, 2021 Complaint at ¶¶ 37 and 38.

prompt him to investigate further. Because these disclosures would prompt a reasonably diligent creditor to investigate whether its right to payment was threatened, the Bankruptcy Court held that the one-year saving's clause did not attach to the 2021 Complaint.

The Trustee admits that the essential facts are undisputed, namely that (1) ANC met with him and his seasoned legal counsel on September 13, 2018, in Philadelphia and (2) at this meeting, ANC disclosed that it had upstreamed several million dollars to Anderson Media and its affiliates.[62] The Trustee also does not dispute that ANC disclosed at the 2018 Meeting that it had already sold all of its operating assets and ceased operations.[63] Thus, it is undisputed that the Trustee knew these facts more than one year (in fact, more than three years) before filing the Complaint in the December 2021 Avoidance Action.

---

[62] *See* A370, Maier Dec. at ¶ 34 ("I disclosed that the sales proceeds from the ANC Acquisition went to pay down the BofA Loan. I also disclosed that Anderson Media and Anderson Management received several million dollars from ANC."); A784-85, Coren Dec. at ¶ 7 ("One of my specific concerns given the large amount of cash paid to ANConnect as part of the ANConnect Transaction (over $29 million) was whether ANConnect had upstreamed any monies to any of its related entities. In response to an inquiry about upstreaming, Mr. Maier and [ANConnect] Attorney [Grant] Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only "a million dollars or two.").); *accord* A723, Miller Depo. at p.13:12-16; A744-45, Homony Depo. at pp. 80:17-21, 81:5-8.

[63] A370, Maier Dec. ¶ 34.

In addition, the Trustee's own evidence introduced facts which further showed that the Trustee had inquiry notice of the UFTA Claim. In its Order, the Bankruptcy Court explained how "the Trustee's evidence *alone* establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the possibility that he held a claim."[64] These facts included that: (a) the Trustee had already filed suit against ANC for alleged fraudulent transfers arising out of the ANC Acquisition;[65] (b) the Trustee's counsel was concerned whether ANC had transferred "any monies" to "any of its related entities";[66] (c) Mr. Maier told the Trustee either "a few million dollars" or "a million dollars or two" had been transferred by ANC to its affiliates;[67] and (d) Mr. Maier and Grant Stein refused to provide any further information on the transfers absent a judgment.[68] Viewing this evidence through the

---

[64] A1529, Order p. 11 (***emphasis added***).

[65] *See* A58-A120, 2018 Complaint.

[66] A784-85, Cohen Dec. ¶ 7.

[67] *See id.;* A723, Miller Depo. p.13:12-16; A745, Homony Depo. p.81:7-8.

[68] A784-85, Coren Dec. ¶¶ 7, 8 ("When the Trustee and I attempted to drill down into specifics about ANConnect's finances, we were met with stonewalling by Mr. Maier and Attorney Stein…Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment.").

Trustee's lens, and as the Bankruptcy Court aptly concluded, "there can be no reasonable debate about whether the revelations made at the 2018 Meeting that *more* transfers had been made should have set off alarm bells" and the additional fact that ANC would not provide any more details on the transfers disclosed at the Meeting without a judgment, "should have solidified his concerns."[69]

Against this, the Trustee simply repeats the arguments he made to the Bankruptcy Court: that ANC's disclosures did not reveal the "magnitude" of the payments, were not "sufficient" to file a fraud claim, or were somehow "incomplete."[70] But this is not how the Uniform Fraudulent Transfer Act's one-year savings clause works. As the Bankruptcy Court decided, the *fact* that ANC disclosed that millions of dollars had been transferred to affiliates was sufficient as a matter of law to start the one-year period even if the *full amount* of the transfers was left to be determined.[71] *See Kach v. Hose*, 589 F.3d 626, 634-635 (3rd Cir. 2009) ("The cause of action accrues even though the full extent of the injury is not then known or

---

[69] A1529-30, Order pp. 11-12.

[70] Doc. 17 at pp. 18, 19, 22.

[71] A1530-31, Order at pp. 12-13. In that regard it is notable that two of the primary cases cited by the Trustee, *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019), and *Basic Capital Mgmt. v. Dynex Capital, Inc.*, 976 F.3d 585 (5th Cir. 2020) are cited, analyzed, and relied on by the Bankruptcy Court in its decision. A1528-30, Order at pp. 10-12.

predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.") (Internal quotation marks and citations omitted.)

The Trustee's unpublished cases do not change the outcome. In *Santander Bank, N.A. v. Branch Banking & Trust Co.*, Civil No. 1:17-CV-01669, 2020 U.S. Dist. LEXIS 572 *16 (M.D. Pa. Jan. 3, 2020), the decision turned on when plaintiff had knowledge of the *fact* of, rather than the *amount* of, the alleged fraud. In *Union Tank Car Co. v. Maxwell*, Civil Action No. H-19-1421, 2021 U.S. Dist. LEXIS 96795, *21 (S.D. Tx. May 21, 2021), the court held that inquiry notice did not arise as a matter of law out of a single cursory response to a single question "without more." In addition, the outcome in *Ballard*, *supra*, does not help the Trustee. First, that case involved a motion to dismiss, not a motion for summary judgment on a full discovery record. Second, ANC's disclosures here went well beyond the more limited information provided there, including ANC's disclosure not only of the fact of millions of dollars in transfers to affiliates, but also of the winding up and financial condition of ANC. Third, the *Ballard* plaintiff used the discovery tools available to it and the *Ballard* defendant responded with obstructionist tactics. Here, the Trustee did not use these tools and the Anderson Parties cooperated with all of their discovery obligations.

## 2. The Trustee did not take reasonable steps to investigate.

Moreover, the Trustee did not take reasonable steps to investigate because he had, but failed to use, the tools at his disposal to pursue an investigation of ANC's transfers to affiliates such as Bankruptcy Rule 2004.

The Trustee incorrectly argues that Rule 2004 was unavailable under the pending proceedings exclusion.[72] However, that exclusion does not apply here because the June 2018 Avoidance Action arose out of the due diligence and performance of the ANC Transaction and a related service agreement—issues that are *unrelated* to the payments to affiliates claims in this case.[73] In addition, Anderson Media and Anderson Management were not parties to the June 2018 Avoidance Action. "Where a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination

---

[72] Doc. 17 at pp. 20-23.

[73] A363, Maier Dec. at ¶ 10; *see also* A486, July 9, 2015 Consent and Lien Release Confirmation Letter, p.2, which is attached to the Maier Dec. at Exhibit 2; *and* A679, Disbursement Request dated July 14, 2015, which is attached to the Maier Dec. at Exhibit 3 (directing SunTrust, as escrow agent, to wire $5,355,812 (plus any accrued interest) to Bank of America). The parties agreed to hold this portion of the Purchase Price in escrow until ANC was able to secure a vendor number for Alchemy with Best Buy. A363, Maier Dec. at ¶ 10; *see also* A682-86, Amendment No. 2 to APA, a copy of which is attached to the Maier Dec. at Exhibit 4.

seeks to discover evidence unrelated to the pending proceeding." *In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (D. Del. 2009).

The Trustee's own case, *In re Wash. Mut.,* held that the debtors did have the right to a Rule 2004 examination even though separate proceedings had already been filed in a district court, a state court and the bankruptcy court. This was because those proceedings either did not involve information regarding the assets sought through Rule 2004 or did not involve the examinee as a party. *Id*. at 52-53. Here, as there, neither the issues nor the parties are related and a Rule 2004 examination was available to the Trustee.

The Trustee's argument that ANC may have withheld properly discoverable information even if he had employed these tools[74] is unfounded speculation. Indeed, the record shows that ANC provided information about the Challenged Payments in response to the Trustee's written discovery requests in the June 2018 Avoidance Action even though such production was not directly requested and/or required. This puts to bed the idea that the Anderson Parties would have obstructed a direct request for the information timely asserted and properly made through the legal tools readily available to the Trustee. In addition to showing that the Trustee did not use the tools available to him to directly investigate the Challenged Payments, the record also

---

[74] Doc. 17 at pp. 20-23.

shows that he did not seek this information even when he did conduct discovery, such as his First Set of Requests for Production of Documents on November 10, 2020 and his September 29, 2022 deposition of Mr. Maier.

The facts showing the Trustee's lack of reasonable diligence are undisputed. The record is clear that the Trustee had ample opportunity to discover the nature of the payments more than one year before he filed this action on December 29, 2021— either through follow-up on the 2018 Meeting disclosures or through the use of his own readily available discovery tools under Bankruptcy Rule 2004.

Perhaps realizing the Bankruptcy Court's Order fully refuted his arguments, the Trustee now attempts to put a new spin on the issue by arguing that ANC was just "crying poor" and engaged in "incidental puffery" at the 2018 Meeting and, according to the Trustee, if he were forced to believe ANC and to act with diligence on the information ANC provided, this would have a "chilling effect" on settlement discussions.[75] Nothing could be further from the truth. The Trustee's counsel's stated skepticism of ANC's disclosure that it held only limited assets means that ANC's contemporaneous disclosure that it paid millions of dollars to its affiliates would have tended to justify his skepticism (at least in his mind) that there were additional assets within reach and therefore the disclosure should have made him *more* diligent

---

[75] Doc. 17 at 27-28; A785, Coren Dec. at ¶ 9.

in running those payments to ground or, as the Bankruptcy Court found, "should have set off alarm bells" and "solidified his concerns".

## II.    CONCLUSION

For all of the foregoing reasons, this Court should affirm the Bankruptcy Court's Order.

Dated: August 5, 2024
Wilmington, Delaware

Respectfully submitted,

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ Evelyn J. Meltzer*
Evelyn J. Meltzer (DE No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302)-777-6532
Facsimile: (302)-421-8390
evelyn.meltzer@troutman.com

-and-

**HUNGELING RUBENFIELD LAW**

David J. Hungeling (*pro hac vice*)
Georgia State Bar No. 378417
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 574-2466
Facsimile: (404) 574-2467
david@hungelinglaw.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitations set forth in Federal Rule of Bankruptcy Procedure 8015(a)(7) and this Court's *Standing Order Regarding Briefing in All Cases* in that the substantive portions of the brief contain 7,097 words as counted by Microsoft Word and the brief was prepared in 14-point Times New Roman font.

Dated: August 5, 2024

TROUTMAN PEPPER HAMILTON SANDERS LLP

*/s/ Evelyn J. Meltzer*
Evelyn J. Meltzer (DE No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302)-777-6532
Facsimile: (302)-421-8390
evelyn.meltzer@troutman.com

-and-

HUNGELING RUBENFIELD LAW

David J. Hungeling (*pro hac vice*)
Georgia State Bar No. 378417
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 574-2466
Facsimile: (404) 574-2467
david@hungelinglaw.com

*Counsel for Appellees*