# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE OUR ALCHEMY, LLC, *et al.*, | : | Chapter 7 |
| | : | |
| Debtors. | : | Bankr. No. 16-11596-JTD |

---

| | | |
|---|---|---|
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | : : : : | Adv. No. 21-51420-JTD |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | Civ. No. 24-243-CFC |
| ANDERSON MEDIA CORPORATION, *et al.*, | : : | |
| | : | |
| Appellees. | : | |

---

Steven M. Coren, COREN & RESS, P.C., Philadelphia, PA; John T. Carroll, III, COZEN O'CONNOR, Wilmington, Delaware

> *Counsel for Appellant*

David J. Hungeling, HUNGELING RUBENFIELD LAW, Atlanta, Georgia; Evelyn J. Meltzer, TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, Delaware

> *Counsel for Appellees*

## **OPINION**

March 31, 2025
Wilmington, Delaware

Coh F. C
CHIEF JUDGE

## I.    INTRODUCTION

This dispute arises in the chapter 7 bankruptcy cases of Our Alchemy, LLC

and Anderson Digital, LLC (together, the "Debtors"). The Chapter 7 Trustee

("Trustee") commenced an adversary proceeding[1] (the "December 2021 Avoidance

Action") against defendants Anderson Media Corporation ("Anderson Media"),

ANConnect, LLC ("ANC"), and Anderson Management Service, Inc. ("Anderson

Management") (collectively, "Appellees"), asserting various claims. Following the

Bankruptcy Court's ruling on Appellees' motion to dismiss, the only remaining

claim sought to avoid and recover certain transfers pursuant to the actual fraud

provision of the Uniform Fraudulent Transfers Act ("UFTA").[2] Following

discovery, Appellees filed a motion seeking summary judgment on the actual fraud

claim, which asserted that the Trustee was in possession of information that put him

on inquiry notice of the transfers at issue as early as 2018, and that the applicable

---

[1] The docket of the adversary proceeding, captioned *Miller v. Anderson Media Corp.*, Adv. No. 21-51420-JTD (Bankr. D. Del.), is cited herein as "Adv. D.I. __."
[2] The complaint asserted claims under Delaware law. Adv. D.I. I. Appellees argued that Texas "has the most significant relationship" to the case, and that a choice of law analysis was required. The Bankruptcy Court determined that no choice of law analysis was necessary because there is no substantive difference between the applicable laws of Texas and Delaware. The parties agree. D.I. 17 at 12 n.8; D.I. 19 at 8 n.15.

limitations period—UFTA's one year savings clause[3]—therefore expired by the time the Trustee filed his complaint in 2021. The Bankruptcy Court agreed. On February 13, 2024, the Bankruptcy Court issued its Memorandum Opinion and Order, *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 2024 WL 606886 (Bankr. D. Del. Feb. 13, 2024) (Adv. D.I. 57) (the "Order") determining that the Trustee had failed to demonstrate the existence of a genuine issue of material fact as to whether the action was brought within one year "after the transfer or obligation was or could reasonably have been discovered by" the Trustee. 6 Del. Code § 1309(1); Tex. Bus. & Com. Code § 24.010(a)(1). The Trustee asserts that summary judgment should be reversed on the basis that the Bankruptcy Court improperly usurped the role of factfinder by weighing evidence and making credibility determinations in granting summary judgment. For the reasons set forth herein, I will affirm the Order.

## II.   BACKGROUND

Unless otherwise noted, the following facts are undisputed. In 2013, ANC, a longtime distributor of videos, books, and music, and four affiliates entered into a

---

[3] Under either Texas or Delaware law, a cause of action for actual fraud under the UFTA is extinguished unless the action is brought within 4 years after the transfer was made or the obligation was incurred or, *if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant*. 6 Del. Code § 1309(1) (emphasis added); Tex. Bus. & Com. Code § 24.010(a)(1) (same).

revolving $150,000,000 Loan and Security Agreement wherein Bank of America, N.A., served as Agent ("BofA Loan"). A361-372, Declaration of Jay Maier ("Maier Decl.") at ¶ 7 & Ex. 1 (A373-83). The BofA loan was secured by all of ANC's assets, including those sold to Our Alchemy. *Id.*; A421 § 7.

In July of 2015, Our Alchemy purchased ANC's video and digital assets (the "ANC Transaction"), with Our Alchemy making a cash payment of $29,888,124.40 ("Closing Payment"). On February 17, 2016, ANC filed a complaint against Our Alchemy in Delaware state court[4] (the "Delaware Action"), alleging that Our Alchemy owed ANC post-closing adjustments and certain other payments and compensation in connection with the ANC Transaction. Our Alchemy asserted in the Delaware Action counterclaims for. Among other things, breach of the underlying asset purchase agreement and wrongful withholding of receivables.

On April 29, 2016, Anderson Media acquired the BofA Loan for $14,671,029. Maeir Decl. ¶ 17 (A365). Also on April 29, 2016, ANC sold its book distribution business to Readerlink Distribution Services, LLC for net proceeds totaling approximately $56 million and, effective July 8, 2016, ANC sold its music and internet (direct to consumer) business to Alliance Entertainment Holding Corporation for net proceeds totaling approximately $21 million. Maier Decl. at

---

[4] *ANConnect, LLC and Anderson Merchandisers, LLC v. Our Alchemy, LLC*, Case No. N16C-02-152 (Del. Sup. Ct. Feb. 23, 2016).

¶ 8 (A365). Each of these sales, and ANC's layoff of staff and cessation of operations, were publicly disclosed in press releases and news articles at or around the time each transaction closed. Maier Decl. ¶ 19 (A365-66) and Ex. 7-9 (A699-708) (press releases and articles). After April 2017, ANC continued to liquidate its remaining assets. *Id.* Though disputed, Appellees assert that "[a]ll proceeds from the sale of ANC's assets were used to pay down the BofA Loan, pay fees owed to Anderson Management and Anderson Merchandisers, and to pay ANC's creditors." Maier Decl. ¶ 24 (A368).

On July 1, 2016, the Debtors filed petitions under chapter 7 of the Bankruptcy Code, and the Delaware Action was stayed. On June 29, 2018, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Appellees and several others, seeking to avoid the ANC Transaction as fraudulent (the "June 2018 Avoidance Action").[5] In response, on September 13, 2018, Jay Maier, ANC's Chief Financial Officer, and Grant Stein, ANC's counsel in the June 2018 Avoidance Action, met with the Trustee, Bill Homony (the Trustee's financial advisor), and Stephen Coren (counsel to the Trustee), in Philadelphia to discuss the June 2018 Avoidance Action and to explore settlement of the Trustee's claims (the "September 2018 Meeting"). Maier Decl. ¶ 32 (A370). The parties submitted competing recollections of the September 2018 Meeting in the form of declarations and

---

[5] *Miller v. ANConnect, LLC, et al.*, Adv. Pro. No. 18-50633 (JTD) (Bankr. D. Del.).

deposition testimony. *See* Maier Decl. ¶¶ 32-35; A718-726, Deposition of George

Miller ("Miller Depo.") at 9:3-13:18 (A720-723); A728-746, Deposition of Bill

Homony ("Homony Depo.") at 77:8-81:24 (A741-745); A783-789, Declaration of

Steven M. ("Coren Decl.") ¶¶ 4-8 (A784-785). Based on the Trustee's submissions

alone, however, it appears undisputed that, at the September 2018 Meeting,

Mr. Maier disclosed to the Trustee, Mr. Coren, and Mr. Homony, that ANC had

fully liquidated (*see* Homony Depo. 78:12-79:19, 80:9-21-81:8 (A742-745)); that a

portion of the sale proceeds from the ANC Acquisition went to pay down the BofA

Loan (*id.*); and that either "a million dollars or two" (Coren Depo. ¶ 7 (A784-785),

"$1 million or $2 million" (Miller Depo. at 13:13-18), or "a few million dollars"

(Homony Depo. at 81:5-8 (A745)) was transferred or "upstreamed" from ANC to

Anderson Media and Anderson Services (*id.*; Coren Decl. ¶ 7 (A784-785)); and that

when pressed further on ANC's contention that the amount upstreamed were limited

to this amount, Mr. Stein "refused to provide any further information," stating that

"such information would follow only after the Trustee obtained a judgment" (Coren

Decl. ¶ 8 (A785)).

It further appears undisputed that, when the Trustee's counsel took Mr.

Maier's deposition on September 29, 2022, in connection with the June 2018

Avoidance Action, counsel did not ask about transfers from ANC to Anderson

Media or its affiliates. Maier Decl. ¶ 35 (A371). The Trustee did not act on this

information until December 29, 2021, when he filed the December 2021 Avoidance Action, more than four years after the alleged fraudulent Transfers took place. On October 11, 2022, the Trustee served discovery requests seeking information related to ANC's Transfers to Anderson Media and its affiliates—more than four years after the September 2018 Meeting. *Id.*; *see also* Maier Decl. Ex. 10 (Trustee's Omnibus Set of Requests for Production of Documents) (A710-717).

Following the Bankruptcy Court's ruling on Appellees' motion to dismiss,[6] the only remaining claim in the 2021 Avoidance Action was the Trustee's actual fraudulent transfer claim under UFTA (the "UFTA Claim"). Specifically, the complaint alleges that ANC fraudulently transferred approximately $23.8 million to affiliated entities in June and August of 2016 (the "Transfers") "with the actual intent to hinder, delay, and/or defraud its then-current and future creditors, including the Debtors." Adv. D.I. 1 at 46-48 (A103-105). Based on the allegations set forth in the complaint, it is clear that the Trustee did not commence the December 2021 Avoidance Action within DUFTA's four-year statute of limitations. After discovery was completed, Appellees filed a motion for summary judgment on the UFTA Claim, asserting that the Trustee was in possession of information that put him on inquiry notice of the Transfers as early as the September 2018 Meeting, and that

---

[6] *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 642 B.R. 155 (Bankr. D. Del. 2022) (granting in part and denying in part motions to dismiss).

6

UFTA's one-year savings clause therefore had also expired by the time the Trustee filed his complaint in December of 2021. The Trustee opposed summary judgment on the basis, *inter alia,* that the evidence on which Appellees relied was insufficient to support summary judgment as a matter of law.[7]

The Bankruptcy Court considered whether the statements made at the September 2018 Meeting rendered the UFTA Claim untimely. The Bankruptcy Court determined that "even if I set aside completely the evidence submitted by the Defendants, the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the possibility that he held a claim." *In re Our Alchemy*, 2024 WL 606886, at *5. Accordingly, the Bankruptcy Court held that there was no genuine issue of material fact as to whether the Trustee commenced the December 2021 Avoidance Action within UFTA's one-year savings clause, and entered summary judgment in favor of the Appellees.

On February 22, 2024, the Trustee filed a timely notice of appeal. D.I. 1. The appeal is fully briefed. D.I. 17, 19, 21. No party requested oral argument.

---

[7] The Trustee also asserted that the statements made during mediation of the 2017 action were not admissible under Federal Rule of Evidence 408, and the Bankruptcy Court disagreed. *See In re Our Alchemy*, 2024 WL 606886, at *3-*4. That issue was not addressed in the Trustee's opening brief and is therefore waived.

## III.   JURISDICTION AND STANDARD OF REVIEW

The Order on appeal "end[ed] the litigation on the merits and le[ft] nothing

for the court to do but execute the judgment" and is therefore a final order. *Riley v.*

*Kennedy*, 553 U.S. 406, 419 (2008) (internal quotations omitted).  The Court has

jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

In reviewing the Bankruptcy Court's Order granting summary judgment, the

Court applies a plenary, or *de novo*, standard of review.  *In re Klaas*, 858 F.3d 820,

827 (3d Cir. 2017); *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197

F.3d 76, 80 (3d Cir. 1999).  Upon *de novo* review, the Court must determine

whether Appellees satisfied their burden of proving that there was "no genuine

dispute as to any material fact" and that they were "entitled to judgment as a matter

of law."  FED. R. CIV. P. 56(a); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146

(3d Cir. 2016).   A factual dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When a movant's evidence

demonstrates the lack of a genuine issue of material fact, the burden shifts to the

opposing party to demonstrate the existence of a genuine issue for trial.  *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "[W]here a non-moving party fails

sufficiently to establish the existence of an essential element of its case on which it

bears the burden of proof at trial, there is not a genuine dispute with respect to a

material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 265 (3d Cir. 2014). "All reasonable inferences from the record must be drawn in favor of the nonmoving party." *MBIA Inc. Corp. v. Royal Indem. Co.,* 426 F.3d 204, 209 (3d Cir. 2005).

## IV.    ANALYSIS

The Trustee argues that the Bankruptcy Court usurped the role of the factfinder and erred when it held as a matter of law that (i) misstatements made during the Settlement Meeting were sufficient to put the Trustee on notice of potential claims; and (ii) the Trustee did not act with reasonable diligence in investigating his claims. *See* D.I. 17 at 1, 11.

### A.    The Discovery Rule

Tracking the language of UFTA, under either Delaware or Texas law, a cause of action for actual fraud is extinguished unless the action is brought within 4 years after the transfer was made or the obligation was incurred or, ***if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant.*** 6 Del. Code § 1309(1) (emphasis added); Tex. Bus. & Com. Code § 24.010(a)(1) (same).

Here, it is undisputed that the alleged fraudulent transfers occurred in 2016—more than four years before the Trustee commenced the December 2021 Avoidance Action. Thus, to be timely, the UFTA claim must have been brought within "one

year after the transfer[s] … [were] or could reasonably have been discovered" by the Trustee. This provision, often referred to as the "discovery rule," defers accrual of a cause of action until the claimant knows, or through the exercise of reasonable diligence or care, could have discovered the fraudulent nature of the transfers for which it seeks relief. *See JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1240 (Del. Ch. 2019) (canvassing case law); *Zenner v. Lone Star Striping Paving, L.L.C.*, 371 S.W.3d 311, 315 (Tex. Ct. App. 2012); *Duran v. Henderson*, 71 S.W.3d 833, 839 (Tex. App. 2002) (citing *Ruebeck v. Hunt,* 142 Tex. 167, 176 (1943)). "[T]he discovery rule requires a plaintiff to seek information about his injuries and their cause once he is apprised of facts that would make a reasonably diligent person seek information." *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. Ct. App. 2005).

"Generally, the plaintiff bears the burden of showing that the discovery rule tolls the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

**B.    The Trustee Did Not Carry His Burden of Showing the UFTA Claim Was Timely Under the Discovery Rule**

Here, it is undisputed that no later than September 2018, the Trustee and Mr. Homony personally gained knowledge that ANC transferred millions of dollars to its affiliates and the payments' circumstances (*i.e.*, the liquidation of ANC's assets) sufficient to prompt him to investigate further. The essential facts, established by the Trustee's own evidence, are undisputed, namely that (1) ANC met with him and his legal counsel on September 13, 2018 in Philadelphia and (2) ANC disclosed at

this meeting that it had upstreamed several million dollars to Anderson Media and its affiliates.[8]  The Trustee also does not dispute that ANC disclosed at the September 2018 Meeting that it had already sold all of its operating assets and ceased operations.[9]  Thus, it is undisputed that the Trustee knew these facts more than one year (in fact, more than three years) before filing the complaint in the December 2021 Avoidance Action.   Because these undisputed disclosures alone would prompt a reasonably diligent creditor to investigate whether its right to payment was threatened, the Bankruptcy Court held that the one-year saving's clause did not attach to the UFTA Claim.

The Trustee introduced undisputed facts that further showed that the Trustee had inquiry notice of the UFTA Claim.  In its Order, the Bankruptcy Court explained how "the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the

---

[8] *See* Maier Decl. at ¶ 34 (A370) ("I disclosed that the sales proceeds from the ANC Acquisition went to pay down the BofA Loan.  I also disclosed that Anderson Media and Anderson Management received several million dollars from ANC."); Coren Decl. at ¶ 7 (A784-85) ("One of my specific concerns given the large amount of cash paid to ANConnect as part of the ANConnect Transaction (over $29 million) was whether ANConnect had upstreamed any monies to any of its related entities. In response to an inquiry about upstreaming, Mr. Maier and [ANConnect] Attorney [Grant] Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only "a million dollars or two."); *accord* Miller Depo. at 13:12-16 (A723); Homony Depo. at 80:17-21, 81:5-8 (A744-45).
[9] A370, Maier Decl. ¶ 34.

possibility that he held a claim." *In re Our Alchemy*, 2024 WL 606886, at *5.

These facts included that: (a) the Trustee had already filed suit against ANC for

alleged fraudulent transfers arising out of the ANC Transaction (A58-A120, 2018

Complaint); (b) the Trustee's counsel was concerned whether ANC had transferred

"any monies" to "any of its related entities" (Cohen Decl. ¶ 7 (A784-85)); (c) Mr.

Maier told the Trustee either "a few million dollars" or "a million dollars or two"

had been transferred by ANC to its affiliates (*id.*; Miller Depo. at 13:12-16 (A723);

Homony Depo. at 81:7-8 (A745); and (d) Mr. Maier and Mr. Stein refused to

provide any further information on the transfers absent a judgment.[10]  Based on

these undisputed facts, the Bankruptcy Court concluded that "there can be no

reasonable debate about whether the revelations made at the September 2018

Meeting that more transfers had been made should have set off alarm bells" and the

additional fact that ANC would not provide any more details on the transfers

disclosed at the Meeting without a judgment, "should have solidified his concerns

… rather than alleviated them." *In re Our Alchemy*, 2024 WL 606886, at *6.

Case law supports the Bankruptcy Court's determination. *See Pirtle*, 177

S.W.3d at 571 ("the discovery rule requires a plaintiff to seek information about his

---

[10] Coren Decl. ¶¶ 7-8 (A784-85) ("When the Trustee and I attempted to drill down into specifics about ANConnect's finances, we were met with stonewalling by Mr. Maier and Attorney Stein … Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment.").

injuries and their likely cause once he is apprised of facts that would make a

reasonably diligent person seek information"); *Basic Capital Mgmt. v. Dynex

Capital, Inc.*, 976 F.3d 585, 591 (5th Cir. 2020) ("Upon hearing that a defendant no

longer has any assets, especially one being sued for millions of dollars, a reasonable

plaintiff would make some sort of inquiry into the situation. And since discovery in

the state-court litigation was ongoing when the deposition occurred, asking a few

follow-up questions at the deposition, for example, would likely have borne fruit.").

### C.    The Trustee's Sufficiency of Notice Argument is Unavailing

The Trustee argues that the Bankruptcy Court erred by holding that

misstatements made during the September 2018 Meeting put the Trustee on notice

of potential claims. D.I. 17 at 13-19. According to the Trustee, ANC's disclosures

did not reveal the "magnitude" of the payments, were not "sufficient" to file a fraud

claim, or were somehow "incomplete." *Id.* at 18-19, 22. The Trustee points to his

testimony together with that of Mr. Homony and Mr. Coren's declaration, all of

which, he contends, supports Appellees' disclosure of the upstreaming of only "$1

million or $2 million" or "a few million dollars," and "refute[s] Appellees'

assertions that they sufficiently informed the Trustee or his counsel of the Transfers

or their magnitude." D.I. 17 at 13. This testimony, the Trustee asserts, "shows that

the truth concerning the magnitude of the Transfers was concealed by

misrepresenting the amounts upstreamed as relatively minor." *Id.* at 13-14. It was

13

not until 2021 that the Trustee learned that Defendants had actually transferred nearly $24 million, he contends, at which point, he acted promptly in filing the action.

I agree with the Bankruptcy Court that "[t]hat is not how the discovery rule works." *In re Our Alchemy,* 2024 WL 606886 at *6. As the Bankruptcy Court properly recognized, based on the Trustee's evidence and assertions alone, the fact that ANC disclosed that millions of dollars had been transferred to affiliates was sufficient as a matter of law to start the one-year period even if the full amount of the transfers was left to be determined. *In re Our Alchemy*, 2024 WL 606886, at *5. "A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Amo Dev., LLC v. Alcon Vision, LLC*, 2022 WL 17475479, at *6 (D. Del. Dec. 6, 2022) (quoting *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015)) (rejecting argument that the information at plaintiff's disposal "did not provide a meaningful window into the full extent of the copying reflected in [defendant's] source code"); *see also Kach v. Hose*, 589 F.3d 626, 635 (3d Cir. 2009) (holding that statute of limitations begins to run "even though the full extent of the injury is not then known or predictable") (citations omitted); *Duran*, 71 S.W.3d at 839 ("[TUFTA's] discovery rule provides that a claim for fraud does not accrue, and thus the limitation period does not begin to run, until the fraud is

discovered, or in the exercise of reasonable diligence should have been discovered.").

As the Bankruptcy Court also explained: "While the Trustee makes much of the fact that the information conveyed at the [September 2018] meeting would not have been sufficient under the applicable rules of civil procedure for him to file a complaint for fraudulent transfer, that is not relevant." *In re Our Alchemy*, 2024 WL 606886, at *5. Rather, "[t]he limitations period begins when a party becomes aware of information that would prompt a reasonable person to conduct an inquiry." *Id.* Indeed, "plaintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued would lead to the discovery of the injury." *Pomeranz v. Museum Partners, L.P.*, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005). "Under the inquiry notice standard, [the Trustee was] required to file [his] claims no more than one year after 'persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, *if pursued*, would lead to the discovery of the injury' to file their claim." *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 859-60 (Del. Ch. 2020) (quoting *In re Dean Witter*, 1998 WL 442456, at*7 (Del. Ch. July 17, 1998) (emphasis in original); *see also In re Transamerica Airlines, Inc.*, 2006 WL 587846, at *5-6 (Del. Ch. Feb. 28, 2006) (refusing to apply the discovery rule where previously discovered information

15

should reasonably have been expected to cause a person in the Plaintiff's shoes to conduct an inquiry). Here, the Trustee was in possession of information, which, if pursued, would have led to the discovery of the Transfers.

The Trustee relies on the *JPMorgan Chase* decision which, according to the Trustee, addressed "analogous facts" and "establishes that the Trustee's prompt action upon learning the "full magnitude" of the Transfers satisfied the discovery rule. *See* D.I. 17 at 16. In *JPMorgan Chase Bank*, the plaintiff asserted actual fraudulent transfer claims under DUFTA to avoid dividend payments made to defendant's stockholders. The defendant moved to dismiss on the basis that the claims were untimely. *See JPMorgan Chase Bank*, 213 A.3d at 1238. The Court of Chancery rejected these arguments, holding that the claims to avoid the dividends were timely under the one-year savings clause in 6 Del. C. § 1309(1) because, prior to the one-year period, the plaintiff knew only that "some dividends" had been paid over the course of several years. *Id.* at 1241.

*JPMorgan Chase* focused on an issue of first impression and held that the one-year discovery period starts ***not*** when the ***mere existence*** of an allegedly fraudulent transfer is or could reasonably have been discovered, but rather when the ***fraudulent nature*** of the transfer was or could reasonably have been discovered. *See JPMorgan Chase Bank*, 213 A.3d at 1216, 1240. The Court held that "the central question under Section 1309(1) is … when the plaintiff discovered or

16

reasonably could have discovered the facts that caused it to file the lawsuit, *i.e.*, not just that a transfer had occurred but that the transfer was fraudulent in nature." *Id.* at 1239. While some of the facts in this dispute are similar to those in *JPMorgan Chase*, others are not. There, as here, the defendant was not a public company and its financial records were not available. Similarly, the plaintiff there had notice of "some" payments. There, however, the court held that the testimony at issue, conveying to plaintiff that defendant "had issued some dividends" was insufficient to make plaintiff "aware of the scope" of the payments or of Defendants' "financial condition at the time so as to put [plaintiff] on notice that the dividends may have been fraudulent in nature," and defendant employed "obstructionist tactics" to preclude its witnesses from answering questions intended to elicit information regarding defendants' "assets, financial health, [and] cash position." *See id.* at 1241. Unlike the *JPMorgan Chase* case, however, here Appellees' financial condition was disclosed; their businesses had been liquidated and the entities were winding down. Moreover, here, as the Bankruptcy Court observed, "at the time the Trustee received the information in question, he was already in the midst of a lawsuit in which he had alleged the Defendants were making transfers of a fraudulent nature. Given that fact, it is unreasonable for the Trustee to claim that he should not be charged with knowledge that these new transfers might also be of a fraudulent nature." *In re Our Alchemy*, 2024 WL 606886, at *6.

17

Here, the disclosures at the September 2018 Meeting were made in a different context and went beyond the information made available to the plaintiff in *JPMorgan Chase*. The *JPMorgan* decision is distinguishable and does not require a different outcome.

### D.    The Bankruptcy Court Did Not Improperly Weigh Evidence or Make Credibility Determinations

The Trustee also argues that summary judgment was erroneous because "[r]esolution of the disputed issues of fact relating to the disclosures at the [September 2018] Settlement Meeting required the weighing of evidence and credibility determinations that the Bankruptcy Court was not permitted to make on summary judgment." D.I. 17 at 14. "Acknowledging that there was conflicting testimony concerning the parties' discussions at the Settlement Meeting, the Bankruptcy Court erred when it rejected the Trustee's version of events and held that misstatements made during a settlement discussion were sufficient as a matter of law to put him on notice of a potential claim." *Id.* The Trustee contends that "it was for the jury to weigh the parties' credibility and to make factual determinations such as whether the Appellees' statements at the Settlement Meeting were misleading, whether such statements would put a reasonable plaintiff on notice of the Transfers and their fraudulent nature ..." *Id.* Similarly, the Trustee argues that the Bankruptcy Court's determination that "the Trustee cannot show that he acted with reasonable diligence in investigating his claims," *In re Our Alchemy*, 2024 WL

18

606886, at *7, was erroneous because it "required weighing of evidence and findings as to reasonableness that are squarely within the province of the jury, not the court on summary judgment." *Id.* at 19-23.

The Trustee's argument is misplaced. A court may determine whether the discovery rule applies as a matter of law "where the facts are so clear that reasonable minds cannot differ." *Santander,* 2020 WL 42724, *6. The Bankruptcy Court did not weigh competing evidence (or make any credibility determinations) to determine whether the Transfers were or could reasonably have been discovered by the Trustee. Rather, in reaching its conclusion, the Bankruptcy Court "set aside" Appellees' evidence and competing version of events altogether, and held, based on the Trustee's evidence and assertions alone, that by virtue of the information the Trustee admitted to receiving at the September 2018 Meeting, the purported fraudulent Transfers at issue were "or could reasonably have been discovered by the [Trustee]." *In re Our Alchemy,* 2024 WL 606886, at *5 ("Here, even if I set aside completely the evidence submitted by [Appellees], the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the possibility that he held a claim.")

The cases cited by the Trustee do not require a different outcome. The Trustee cites *Santander Bank, N.A. v. Branch Banking & Tr. Co.,* 2020 WL 42724,

19

at *6 (M.D. Pa. Jan. 3, 2020), in which the court denied summary judgment under Pennsylvania UFTA's one-year discovery rule where parties presented "competing evidence" and "reasonable fact finders could differ" as to when plaintiff could reasonably have discovered defendant's fraud. In *Santander Bank,* the decision turned on when plaintiff had knowledge of the fact of, rather than the amount of, the alleged fraud. *Santander Bank*, 2020 WL 42724 at *6. In *Union Tank Car Co. v. Maxwell*, 2021 U.S. Dist. LEXIS 96795, *21 (S.D. Tex. May 21, 2021), the court held that inquiry notice did not arise as a matter of law out of a "yes" response to a single question (whether defendant had engaged in any significant asset transfers). Appellees' disclosures here went beyond the more limited information provided in that case, including Appellees' disclosure of millions of dollars in transfers to affiliates in the context of its liquidation—disclosures made in the context of a meeting to discuss the settlement of another alleged fraudulent transfer.

## V.    CONCLUSION

As an essential element of his case, the Trustee bore the burden of "showing that the discovery rule toll[ed] the statute of limitations." *Schmidt*, 770 F.3d at 251. "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt,* 767 F.3d at 265. The Trustee has

failed to demonstrate any error in the Bankruptcy Court's determination that no genuine issue of material fact existed for trial that the UFTA Claim was time-barred. Accordingly, I will affirm the Order.

The Court will issue a separate Order consistent with this Opinion.